[No. 9843-5-III. Division Three. March 20, 1990.]

THE CITY OF SUNNYSIDE, *Petitioner,* v. RAUL V. SANCHEZ, *Respondent.*

*Daniel B. Heid, City Attorney,* for petitioner.

*Roger Garrison,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *John R. Wasberg, Assistant,* amici curiae for petitioner.

THOMPSON, J.—We granted the City of Sunnyside's request to review the trial court's suppression of breath test results in its drunken driving prosecution of Raul V. Sanchez. We reverse and remand for trial.

Sunnyside Police Officer Darrell J. Merry arrested Mr. Sanchez on March 30, 1987, for driving while under the influence of alcohol or drugs. Officer Merry took Mr. Sanchez to the Sunnyside police station, where he advised him of his *Miranda* rights and his rights under Washington's implied consent statute, RCW 46.20.308. Mr. Sanchez was permitted to speak with his attorney, and then agreed to submit to a breath test for alcohol.

Mr. Sanchez provided four breath samples, but the testing machine failed to register a result. The parties have stipulated there is nothing to indicate Mr. Sanchez intentionally caused the test failure. Officer Merry then asked

Mr. Sanchez to travel to Grandview to take the test, and Mr. Sanchez agreed. The Grandview test resulted in two alcohol readings of .12 percent.

After a hearing, the Municipal Court suppressed the results of the Grandview test. The Superior Court affirmed, and this court granted discretionary review. This court also granted the Attorney General's motion to file an amicus brief.

We conclude Officer Merry had authority to conduct the Grandview breath test because the test contemplated by the implied consent statute, RCW 46.20.308, had not yet been completed. Although an effort was made to take a breath sample at the Sunnyside station, no "test" was completed as provided by statute; thus, the officer was within his authority to transport Mr. Sanchez to Grandview to perform a complete test.

RCW 46.61.506(3) authorizes the state toxicologist to determine the procedures for conducting breath tests. Pursuant to this authority, WAC 448–12–220 defines a test:

> The test of a person's breath for alcohol concentration by infrared test method [BAC Verifier DataMaster, *see* WAC 448–12–210] shall consist of the person insufflating deep lung air samples at least twice into the instrument sufficient to allow two separate measurements.

Mr. Sanchez argues this language literally does not require that a measurement actually result from the breath sample, but merely that the person produce samples *sufficient to allow* measurement. On the other hand, the City and amicus contend under the regulation a breath sample does not result in a "test" unless it actually produces a measurement on the testing machine.

This issue is novel in Washington, and amicus points to only one other jurisdiction in which the question has been addressed. In *Commonwealth v. Fullerton,* 31 Pa. Commw. 609, 377 A.2d 1024 (1977), the breath testing machine was set on "analyze" rather than "test", and therefore failed to record a measurement. The defendant refused the officer's request to blow into the machine again, and the question

on appeal was whether this constituted a "refusal" under Pennsylvania's implied consent law.[1]

> To err is human and we hold that Fullerton could not avail himself of this mistake and unreasonably withhold his assent to blow into the machine on the second occasion without his action being construed as refusing to take the test. Certainly no prejudice or harm would have befallen Fullerton had he blown into the machine on the second occasion. . . .
>
> In reality Fullerton never did take the first test because the machine could not have functioned. There never was a test result in this case. This is not an instance where the test result was negative or below a certain reading for alcoholic content and the person is requested to take the test again to see if the reading is different on the second test. Nor is it the type of situation where we could conclude that the [driver's] constitutional rights were trammeled by the police officers due to the officers' unjustified and unwarranted actions. When the defect was immediately discovered and explained to Fullerton, he was under a legal obligation to comply with the request to take the test on the readjusted breathalyzer machine or face the consequences of failing to assent.

*Fullerton,* 31 Pa. Commw. at 614–15.

BAC Verifier operators are trained to use another machine for the test if they receive an "INVALID SAMPLE" message. This is the procedure regardless of whether the error is attributable to a defect in the instrument or to the suspect's refusal to cooperate. This procedure gives the suspect another chance to cooperate, and avoids the problem of an officer making a premature determination that the suspect's noncooperation constitutes a refusal to take the test.

We see no prejudice to the defendant in performing the test on a different machine. The fact a suspect is transported to a different location is not itself objectionable. It is usually necessary to transport a suspect from the point of arrest to the location of the breath testing machine. The

---

[1]Arguably, *Fullerton* is not on point because it is a license revocation case, not a criminal prosecution for driving an automobile under the influence. However, the precise issue raised in *Fullerton* was not whether the defendant had refused the test altogether, but whether he already had taken the test, and should not have been required to take another. Although it arises in a different context, the question here is the same.

need to again transport a suspect to another locale is not a basis to suppress the test, absent other factors. Other factors could include transporting a suspect an unreasonable distance causing a test delay seriously affecting the result. Also, as in *Fullerton,* there is no indication here that the officer was requesting a repeated test because he was dissatisfied with the results of a first test.

The implications of this issue transcend the narrow question raised in this case. The question whether a suspect has refused to take the test, for purposes of the license revocation proceeding, is a question of fact. *See Borger v. Department of Licensing,* 51 Wn. App. 942, 944, 756 P.2d 153, *review denied,* 111 Wn.2d 1016 (1988); *Turner v. Department of Motor Vehicles,* 14 Wn. App. 333, 335–36, 541 P.2d 1005 (1975). The BAC Verifier's "INVALID SAMPLE" message, under the procedure outlined above, should not be viewed as determinative of, or perhaps even relevant to, the issue of a suspect's refusal to take the test.

Mr. Sanchez' attempts to blow into the machine in Sunnyside did not constitute a "test", and Officer Merry was authorized to transport Mr. Sanchez to Grandview to complete the test. We reverse the court's order suppressing results of the Grandview test, and remand this case for trial. This conclusion makes it unnecessary to address other issues raised here.

MUNSON, C.J., and GREEN, J., concur.

Review denied at 114 Wn.2d 1028 (1990).