[Nos. 17254-2-II; 17647-5-II. Division Two. January 31, 1997.]

THE STATE OF WASHINGTON, *Petitioner*, v. ROBERT
BROKMAN, ET AL., *Respondents*.

*John W. Ladenburg, Prosecuting Attorney,* and *Thomas C. Roberts, Deputy,* for petitioner.

*Timothy P. Coogan,* for respondents.

BRIDGEWATER, J. — In this consolidated appeal the State appeals two superior court decisions reversing district court DUI convictions of Robert Brokman and Larry W. Dixon. Each individual received appropriate implied consent warnings before providing two breath samples for analysis by a malfunctioning BAC Verifier DataMaster. Each was moved to a different location and, without renewed implied consent warnings, provided additional breath samples for analysis by a functioning DataMaster. We hold that RCW 46.20.308 permits an officer to continue testing, without giving renewed implied consent warnings, until obtaining valid test results. We reverse both superior courts.

During separate incidents in 1991, Brokman and Dixon were arrested for driving while under the influence of intoxicating liquor. Each was given appropriate implied consent warnings before providing breath samples for analysis by a malfunctioning DataMaster. In both cases the DataMasters produced test results, but the test results were invalid because the DataMasters registered external

standards[1] below those required by WAC 448-13-050. Because the DataMasters malfunctioned, each defendant was moved to another location where, without renewed implied consent warnings, he provided additional breath samples for analysis by a functioning DataMaster. The second tests produced valid results. Both district courts denied motions to suppress the results of the second tests. In denying the defendants' motions, the district courts relied on *City of Sunnyside v. Sanchez*, 57 Wn. App. 299, 788 P.2d 6, (officer has authority to complete test), *review denied*, 114 Wn.2d 1028 (1990). The defendants were subsequently convicted of driving while under the influence. The respective superior courts reversed both convictions, finding in both cases that the State exceeded its lawful authority by giving second tests, i.e., by measuring more than two valid breath samples from each defendant. The State appeals.[2]

RALJ 9.1 governs appellate review of a superior court decision reviewing a decision of a district court. *State v. Ford*, 110 Wn.2d 827, 829, 755 P.2d 806 (1988); *State v. Hodgson*, 60 Wn. App. 12, 15, 802 P.2d 129 (1990). Pursuant to RALJ 9.1(a), an appellate court shall review the decision of the district court to determine whether that court has committed any errors of law. A superior court reviews a district court decision under the same RALJ 9.1 appellate standards. *Ford*, 110 Wn.2d at 829-30.

■ Under RCW 46.20 a person operating a motor vehicle while under the influence is deemed to have given consent to a "test or tests" of his or her breath or blood for purposes of determining the alcohol content of the

---

[1] "'External standard test' means the use of a simulator containing a certified simulator solution, to provide a known alcohol vapor concentration to test the accuracy and proper working order of the DataMaster and confirm its calibration at the time of a person's breath test. This test of the function of the DataMaster is performed with every breath test. The external standard test does not calibrate the DataMaster." WAC 448-13-030(15).

[2] In Dixon's case the superior court also determined that the State had abused the discovery process. At oral argument Dixon conceded, thereby removing the issue from our consideration.

breath or blood. RCW 46.20.308(1).[3] The "test or tests" are subject to the provisions of RCW 46.61.506. RCW 46.20.308(1). To be considered valid, a test must be performed according to methods approved by the state toxicologist. RCW 46.61.506(3). The state toxicologist has approved methods including a protocol for use of the Data-Master. The fourth step of the protocol requires the subject to provide a first breath sample. The sixth step requires the external standard simulator solution test to read between .090 and .110. WAC 448-13-050. The administrative code states the protocol must be followed for the test to be certified and valid. Former WAC 448-13-060 (1991).[4] Thus, a test under RCW 46.20.308 must be a valid test. "The ultimate concern of the judiciary is that the methods approved [of] result in an accurate test . . . ." *Ford*, 110 Wn.2d at 833. Because the external standard simulator solution tests initially read .049 in Brokman's case, and .089 in Dixon's case, the initial results were invalid. RCW 46.61.506(3); WAC 448-13-050, -060.

## I

 Brokman and Dixon contend that the officers did not have the authority to conduct additional tests after each defendant provided two breath samples for analysis by a malfunctioning DataMaster. They argue that because the WAC defines a test as consisting of at least two breath

---

[3]Although RCW 46.20.308 has been changed since 1991, we refer to the current statute because the changes do not affect the analysis. The former statute states in relevant part:

"Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor."
Former RCW 46.20.308(1) (Laws of 1989, ch. 337, § 8).

[4]"A test shall be a valid test and so certified, if the requirements of WAC 448--13-040 [administration of test] and 448-13-050 [testing protocol] are met . . . ." The current WAC adds an additional consideration involving interference that is not relevant here. *See* WAC 448-13-055, -060.

samples "sufficient to allow two separate measurements," WAC 448-13-050,[5] they satisfied the requirements by providing two breath samples that were measured.

In *Sanchez*, Division Three held that an officer has the authority under RCW 46.20.308 to direct the testing of a suspect's breath until the test is complete, even assuming the breath samples were sufficient to allow measurements of their alcohol content. *Sanchez*, 57 Wn. App. at 301-03. In *Sanchez*, the test was not complete when the defendant provided breath samples for analysis by an apparently malfunctioning DataMaster. *Sanchez*, 57 Wn. App. at 300. Brokman and Dixon argue that *Sanchez* is distinguishable from their cases because in *Sanchez* no measurements were obtained whereas here the tests were complete when two measurements were obtained, even though the measurements were invalidated by external standard simulator solution tests. Brokman and Dixon make a distinction without a difference. There is no principled basis for distinguishing between a malfunctioning Data-Master that fails to obtain a measurement and a malfunctioning DataMaster that produces an invalid measurement. Because the purpose of the test is to achieve accurate results, we hold that RCW 46.20.308 and the administrative protocol permit multiple breath samples to be taken until a valid test occurs as defined by the protocol approved by the state toxicologist. As previously stated, under RCW 46.20.308 a test must be a *valid* test—an invalid test does not satisfy RCW 46.20.308. No test occurs until a valid test occurs. To conclude that the State loses its statutory authority to conduct a valid test after two breath samples are provided for analysis by a malfunctioning DataMaster would be inconsistent with the plain language of RCW 46.20.308, which contemplates consent to a "test or tests," and would be inconsistent with the ultimate purpose behind the administrative protocol, which is to achieve an accurate test result. *Ford*, 110

---

[5]Both defendants rely on the former WAC 448-12-220, replaced by WAC 448-3-050 before these incidents occurred.

Wn.2d at 833. Because the district court correctly construed the law when it denied Brokman's motion to suppress, the superior court should have affirmed his conviction.

## II

In Dixon's case, the superior court determined that the valid test results should have been suppressed on an alternative basis that implied consent warnings were not given a second time before Dixon provided breath samples for analysis by a functioning DataMaster. Neither the statute nor the implementing administrative code expressly limits implied consent to a set number of breath samples taken or DataMasters used. In fact, the possibility of multiple tests and thus multiple breath samples is contemplated by the plain language of the statute. *See* RCW 46.20.308. The protocol required by RCW 46.20.308 and approved by the state toxicologist provides assurance that the breath test conducted on the DataMaster machine will be accurate and reliable. Because multiple tests are contemplated by the plain language of RCW 46.20.308, and the taking of multiple breath samples necessitated by malfunctioning equipment is consistent with the statutory purpose of achieving a valid, accurate, and reliable measurement, there is no need for further implied consent warnings merely because initial tests do not meet the standards of WAC 448-13-050. We hold that under RCW 46.20.308 a person is deemed to have given consent to a valid, accurate, and reliable test or tests of the person's breath or blood by the statutorily and administratively defined methods, and that renewed implied consent warnings are not necessitated by any disruption in the tests caused by a malfunctioning DataMaster. Thus, because the district court correctly determined that renewed implied consent warnings were not necessary after Dixon's invalid test and before additional breath samples were taken, the superior court's decision to the contrary was in error. In summary, both district court convictions should have been affirmed.

We note there is no evidence the officers' actions were unconstitutional, unjustified, unreasonable, or unwarranted intrusions into either defendant's legitimate privacy or liberty interests. Our holdings should not be interpreted to give authority for abuse.

We reverse the superior courts and remand for entry of orders consistent with this opinion.

HOUGHTON, C.J., and ARMSTRONG, J., concur.