2016 JUN 13 AM 9:56

COURT OF APPEALS DIV I
STATE OF WASHINGTON

FILED

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ERROL CHARLES SPEED, | ) | No. 72302-2-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | ) | |
| Respondent. | ) | FILED: June 13, 2016 |
| | ) | |

APPELWICK, J. — Speed was convicted of violations of San Juan County Code after evidence of the violations was found on his property during the execution of a search warrant. Speed asserted that the evidence obtained during the execution of the search warrant should be suppressed, because the probable cause to support the warrant was based on an earlier unconstitutional search of his property via aerial images. And, he argued that the warrant was invalid, because a tip that led to the initiation of the investigation was unreliable and this fact was improperly omitted from the warrant application. The district court denied Speed's motion to dismiss or suppress the evidence. The search warrant was supported by sufficient probable cause even after excluding consideration of the

aerial images. The record confirms that the State conducted an independent investigation after receiving the tip. We affirm.

FACTS

The Speed Family Trust owns approximately 11 acres of land on Orcas Island in San Juan County (County). Errol Speed is a trustee of the Speed Family Trust. In May 2010, Speed submitted a request for code enforcement to the San Juan County Department of Community Development and Planning (CD&P). Speed's request alleged that a business, owned by Steven Pearson, engaged in multiple code violations and failed to obtain necessary permits. Those allegations led to an investigation and an administrative hearing examiner ruling against Pearson.

On December 16, 2011, Deputy Building Official (DBO) for CD&P, John Genuich, filed an activity report after having a conversation with Pearson. Pearson told DBO Genuich that Speed's property had, "potentially engaged in" construction of a single family residence (SFR) without obtaining a required building permit. Based on this information, DBO Genuich attempted to directly observe Speed's property, but was unable to do so from a public way. But, he noted that he discovered an overhead view of what appeared to be an SFR on Speed's property. The activity report also noted that DBO Genuich was unable to find a permit issued for the construction of an SFR on Speed's property. The activity report concluded by stating that the matter was going to be referred to a code enforcement officer (CEO).

The case was referred to Christopher Laws, a CEO for CD&P. After receiving the complaint about Speed's property, CEO Laws began an investigation into the property. He reviewed digital satellite images of Speed's property on the internet from Google Earth[1] and digital aerial images from the County's Polaris[2] database. The images showed a large structure with three skylights in the roof, a chimney, a small porch, and a deck. And, CEO Laws reviewed County records, which illustrated that Speed had provided the tax assessor with information about a large structure on the property for taxing purposes. The tax assessor's records showed a structure on the property with a "foot print" of approximately 1,332.5 square feet. Speed informed the tax assessor that the structure had a wood stove, but not electricity, plumbing, or a septic system. Based on County records, CEO Laws also determined that no permits had been issued for the property.

On December 21, 2011, the County sent Speed a letter of inquiry requesting that he discuss potential code violations with CD&P. On January 5, 2012, the CD&P issued a notice of violation and stop work order, because Speed did not respond. It stated that Speed violated the San Juan County Code (SJCC) by initiating the construction of an SFR prior to the issuance of a building permit and by occupying a structure before approval by the building official. It said that Speed

---

[1] Google Earth is a publicly-available interactive mapping program used to display satellite images of Earth's surface, allowing users to view the latitude and longitude of physical structures. In re Application of United States for an Order Authorizing Disclosure of Location Information of a Specified Wireless Telephone, 849 F. Supp. 2d 526 (D. Md. 2011)

[2] The Polaris images are contained in a pictorial database maintained by San Juan County. The images are relatively high definition aerial photographs representing snapshot views of the past condition of the property.

was to cease any work on the SFR, submit an after-the-fact building permit within 30 days, or apply for a demolition permit. It noted that if Speed did not comply, he faced possible civil and criminal penalties.[3]

On January 6, 2012, Speed's attorney e-mailed CEO Laws. Speed's attorney stated that the alleged SFR is not a residence as indicated in the tax assessor's records. And, that it has no septic, electric, plumbing, or wood stove. And, Speed's attorney maintained that the occupants of the property live in a 30-foot trailer—not the alleged SFR.

On February 2, 2012, Speed submitted to CD&P a document entitled "Statement of Exemption." The document stated that the alleged SFR was an accessory structure—an exempt single story structure to be used for agricultural purposes that is less than 1,000 square feet in area—in compliance with SJCC 15.04.500. CD&P rejected the document, because it was not on the required form, did not contain required information, and did not include the required fee.

---

[3] SJCC requires that any owner who intends to construct or change the occupancy of a building or structure shall first apply to the building official and obtain the required permit. SJCC 15.04.540; International Residential Code (I.R.C.) R105.1 (2003). The SJCC adopts, among others codes the International Residential Code. SJCC 15.04.050. No building or structure shall be used or occupied until the building official has issued a certificate of occupancy. I.R.C. R110.1 (2003). It is unlawful for any person to erect or construct any building in conflict with or in violation of any provisions in the code. I.R.C. R113.1 (2003). Any structure over 200 square feet must either be (a) permitted or (b) if under 1,000 feet and not used for human habitation, have an owner/builder exemption. SJCC 15.04.500;.570;.050(B); I.R.C. R105.2 (2003). The SJCC also requires mechanical permits and inspections for installed mechanical devices. SJCC 15.04.590(D)(6). Specifically, it notes that the installation of wood-burning stoves is subject to regulation. SJCC 15.04.560. And, it requires that there be sewage disposal in places where people reside. SJCC 8.16.060; .330.

On April 3, 2012, the County filed a civil complaint against Speed in San Juan County Superior Court to enforce compliance with County codes. Speed proposed a settlement agreement. Speed's proposal was unacceptable to the County. Months later, on October 16, 2012, the State requested a warrant to search Speed's property for building and land use violations. The application for the search warrant was based on CEO Laws's declaration. CEO Laws's declaration outlined the information he obtained during his investigation, and he attached an aerial Google Earth image and three Polaris images. A judge issued the warrant. Officials inspected Speed's property pursuant to the warrant. They took multiple photographs and measurements. Inside the alleged SFR, the officials found a bed, a kitchen, a stove, a table, a couch, a chair, and books.

On November 21, 2012, the State filed a criminal complaint against Speed in San Juan County District Court. It charged Speed with unlawfully using or maintaining an unpermitted structure, unlawfully occupying a building, and failing to have approved sewage disposal—misdemeanors. And, it charged Speed with making false or misleading statements to a public servant—a gross misdemeanor. On January 7, 2013, Speed moved to dismiss the State's complaint or, in the alternative, to suppress all information regarding Speed's property that was obtained through Pearson's statements or through aerial surveillance. He argued Pearson's statements did not amount to sufficient probable cause and that the aerial surveillance violated his rights under article I, section 7 of the Washington Constitution.

Ultimately, on September 6, 2013, the district court denied Speed's motion to dismiss or suppress. A jury found Speed guilty of unlawful use/maintenance of an unpermitted structure pursuant and failure to have appropriate sewage disposal. Speed appealed to the San Juan County Superior Court. The superior court affirmed the district court in all respects. On August 8, 2014, Speed moved for discretionary review in this court under RAP 2.3(d), which was granted in part.

## DISCUSSION

Speed argues the district court erred when it denied his motion to dismiss or suppress evidence.[4] The superior court affirmed the district court's decision. Appellate review of a superior court decision reviewing a decision of a district court is governed by RALJ 9.1. State v. Brokman, 84 Wn. App. 848, 850, 930 P.2d 354 (1997). An appellate court reviews the decision of the district court to determine whether that court has committed any errors of law. Id.

### I.    Aerial Images

Speed asserts that the State's use of the aerial images constituted a warrantless search that was an unreasonable intrusion into his private affairs under article I, section 7 of the Washington Constitution. If the police or another

---

[4] Speed makes several arguments in a statement of additional grounds (SAG). RAP 10.10 states that a SAG is permitted, "[i]n a criminal case on direct appeal." RAP 2.1 defines "appeal" as, "[r]eview as a matter of right." Speed's case is before this court on discretionary review—not review as a matter of right. Therefore, RAP 10.10 does not provide Speed a right to file a SAG. But, Speed received correspondence from this court's clerk's office informing him of his right to file a SAG pursuant to RAP 10.10. We elect to consider Speed's SAG to the extent it raises arguments about the issues we will reach in deciding this case. See RAP 12.1; State v. Knighten, 109 Wn.2d 896, 908, 748 P.2d 1118 (1988) (stating that pursuant to RAP 12.1, an appellate court may request and consider additional briefing).

6

governmental agent conducts a search, article I, section 7 is implicated and the search must be conducted pursuant to a warrant or fall within one of the recognized exemptions to the warrant requirement. State v. Young, 123 Wn.2d 173, 181, 867 P.2d 593 (1994). When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed. State v. Ladson, 138 Wn.2d 343, 359, 979 P.2d 833 (1999). But, evidence tainted by unlawful government action is not subject to suppression provided that it is ultimately obtained pursuant to a valid warrant or other lawful means independent of the unlawful action. State v. Gaines, 154 Wn.2d 711, 718, 116 P.3d 993 (2005).

The most interesting issue here is whether the use of the aerial images obtained by the government without a warrant, to determine whether violations of County code were being committed, constituted an unconstitutional search of the property under article I, section 7 of the Washington Constitution. However, we need not reach this constitutional issue. Viewing the evidence supporting the application for the search warrant, excluding from consideration all evidence from any aerial images whether or not constitutionally obtained, is sufficient to resolve the case on other grounds.

The State's search warrant application—CEO Laws's declaration—included information obtained from the aerial images and the aerial images were attached to the application. When information contained in an affidavit of probable cause for a search warrant is obtained by an unconstitutional search, that information may not be used to support a warrant. State v. Eisfeldt, 163 Wn.2d 628, 640, 185

7

P.3d 580 (2008). But, the inclusion of illegally obtained information in a warrant affidavit does not render the warrant per se invalid, provided that the affidavit contains facts independent of the illegally obtained information sufficient to give rise to probable cause. Gaines, 154 Wn.2d at 718. The court must view the warrant without the illegally gathered information to determine if the remaining facts present probable cause to support the search warrant. Eisfeldt, 163 Wn.2d at 640. If the warrant, viewed in this light, fails for lack of probable cause, the evidence seized pursuant to that warrant must also be excluded. Id. But, if the affidavit establishes probable cause independent of illegally obtained information, it is still valid. State v. Coates, 107 Wn.2d 882, 887-88, 735 P.2d 64 (1987).

Although we defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion this court reviews de novo. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Probable cause is established if the affidavit sets forth sufficient facts to lead a reasonable person to conclude there is a probability that the defendant is involved in criminal activity and that evidence of the criminal activity can be found in the place to be searched. State v. Maddox, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). In determining probable cause, the magistrate makes a practical, commonsense decision, taking into account all the circumstances set forth in the affidavit and drawing commonsense inferences. Id. at 509-10. It is only the probability of criminal activity, not a prima facie showing of it that governs probable cause. Id. at 505.

Therefore, here, in order for the warrant to be valid without the references to the aerial images, the State's application for a search warrant needed to

establish a reasonable probability that Speed had violated a state or local law and that evidence of it could be found on his property. After excising statements referencing the aerial images from Laws's declaration, the following salient facts remain:

- CEO Laws received an activity report that an SFR had been constructed on Speed's property without the benefit of an approved building permit.
- Building permits are required for the construction of all SFRs in the County. It is a criminal offense to have unpermitted structures on a tax parcel.
- Speed previously provided the tax assessor with information about a structure on his property for taxing purposes. He claimed the structure had no electricity, no plumbing, no septic, but did have a wood stove.
- A search of the County's permit database indicated that no building permits, plumbing permits, or mechanical permits had been issued for the property.
- CEO Laws received an e-mail from Speed's attorney stating that the alleged SFR is not a residence and has no septic, electric, plumbing, or a wood stove. And, it said that the residents live in a trailer on the property.
- The attorney's statement about the wood stove was directly contrary to the information provided by Speed to the County assessor.
- A mechanical permit is required for a wood stove.
- Any structure, whether it be an SFR or an agricultural building, which exceeds 1,000 square feet requires an approved building permit from the County to construct. A structure that is less than 1,000 square feet may be constructed with an owner/builder exemption that is reviewed and approved by CD&P. Any residence, regardless of size, requires an approved building permit. Any structures less than 200 square feet which meets the exemption requirements listed in the code do not require a permit.[5]

---

[5] In a SAG, Speed asserts that nowhere in the record is there evidence that the statement of exemption Speed filed was reviewed and found noncompliant with state or county law. The district court made a finding that the County rejected the document. Therefore, Speed is essentially challenging this finding of fact. In reviewing a trial court's decision on a motion to suppress, this court reviews challenged findings of fact for substantial evidence. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). CEO Laws submitted a declaration in May 2013. It stated the County reviewed Speed's Statement of Exemption and did not accept

9

- The tax assessor's records show a structure on Speed's property with an overall footprint of approximately 1,332.5 square feet.
- According to a record of an earlier superior court action, Speed and his partner previously built a residence on the property where they were living and applied for a permit for an accessory agricultural building for the structure, rather than a permit for a residence. Both Speed and his partner admitted they did so to avoid the application of certain building codes.
- Trailer installation and permitting is regulated by both state and local law.[6] CEO Laws was unable to locate any permits for the trailer Speed's attorney mentioned.
- In order to verify what permits were required for the parcel to bring it into conformance with code requirements, CEO Laws requested information relating to the location, size, and purpose of any and all structures over 200 square feet in size located on the property.

Based on these facts—even without reference to information gleaned from the aerial images—there was probable cause to believe that at least one unpermitted and nonexempt structure was located on Speed's property without a permit in violation of the law.

As to the structure, regardless of whether it was a residence, if the building was over 1,000 square feet, it had been constructed without a building permit in violation of the law. SJCC 15.04.050(B); .500;.570; I.R.C. R105.2. And, if it was

---

it because it was neither on the proper form nor accompanied by any of the required supporting documents necessary for CD&P staff to review it for compliance with county land use and codes. We conclude that this constitutes substantial evidence to support the district court's finding.

[6] In a SAG, Speed claims that there was no evidence that he was living in his trailer. But, Speed's attorney told authorities that Speed was living in the trailer. CEO Laws's declaration states that trailer installation and permitting is regulated by both state and local law and that he was unable to find any permits for the trailer. Speed does not argue that the law does not require his trailer to be permitted. Rather, he asserts that CEO Laws did not provide the court with legal authority that his trailer required a permit. But, Speed cites to no authority to support his assertion that Laws's declaration was required to provide specific legal authority. Even if the law did not require the trailer to be permitted, and even if the magistrate needed specific legal authority to issue the search warrant as to the trailer, there was still probable cause to search the trailer to determine if Speed was actually living there or in the unpermitted, alleged SFR.

over 200 square feet and less than 1,000 square feet, it had been constructed without first having obtained an approved exemption.[7] SJCC 15.04.050(B); .500; .570; I.R.C. R105.2 (2003). Although CEO Laws's declaration referred to the "foot print" of the structure rather than the total square footage of the structure, it was a reasonable and common sense inference that a structure with a footprint of 1,332.5 square feet would be 1,000 square feet or at least 200 square feet.[8] It is only the probability of criminal activity, not a prima facie showing of it that governs probable cause. Maddox, 152 Wn.2d at 505.

Moreover, there was probable cause of at least one additional code violation. The tax assessor records indicated there was a wood stove on the property. A mechanical permit is required for a wood stove, and there was no mechanical permit issued for the property.[9] SJCC 15.04.560, .590(D)(6).

---

[7] CEO Laws's declaration stated that there was no record of issued building permits, plumbing permits, or mechanical permits for the property. This statement combined with the fact that CEO Laws specifically requested information about any structure on the property over 200 square feet in size, implies that there was no exemption issued for the property either.

[8] Speed contends that CEO Laws's reference to the 1,332.5 "foot print" of the structure in his declaration was unhelpful, because the size of an accessory structure is measured by square footage—not its footprint. He noted that the assessor's office reported the structure as being only 864 square feet. But, even if CEO Laws's declaration had included the fact that the structure was 864 square feet, the structure—larger than 200 square feet—would have required a permit or acceptance of a statement of exemption. SJCC 15.04.050(B); .500; .570.

[9] Speed asserts that the wood stove had been removed from the property before Speed's attorney informed the County that the property did not have one. He also asserts that having evidence that a wood stove exists is not evidence that it was installed and functioning. But, a possible innocent explanation for the discrepancy between what Speed reported and what his attorney reported about the existence of the wood stove does not necessarily negate probable cause. See State v. Graham, 130 Wn.2d 711, 725, 927 P.2d 227 (1996). Nor does the fact that the wood stove may not have been functional.

As adeptly stated by the Superior Court:

> [Speed's] arguments are focused entirely on whether the information was sufficient to establish probable cause to believe the structure on his property was being used as a residence. But Mr. Laws'[s] Declaration provided information that indicated probable County Code violations other than just the occupation of the large structure as a residence. . . .
>
> Thus, whether or not the information was sufficient to establish probable cause to believe [Speed] was occupying the large structure as a residence, which this Court agrees that there was, there was clearly sufficient information to establish probable cause that other permitting violations were occurring, violations which are declared to be misdemeanors under SJCC 15.04.090(A).

We conclude that CEO Laws's declaration, even after excising the references to the aerial images, set forth sufficient probable cause to lead a reasonable person to conclude there was evidence of criminal activity on Speed's property.[10] Even if the use of the aerial images was unconstitutional, the district court did not err when it declined to suppress the evidence obtained via the search warrant on this basis.

II. Informant

But, Speed also argues that the warrant was invalid, because CEO Laws's declaration failed to provide any details as to the credibility and veracity of Pearson—an informant. CEO Laws's declaration noted that, "On or about December 16, 2011, I received an activity report that a single-family residence had been constructed . . . without the benefit of an approved building permit." The

---

[10] Because we conclude there was sufficient probable cause even without the aerial images, we do not address Speed's argument that there was insufficient probable cause, because the aerial images were stale. Similarly, we need not consider Speed's arguments related to the flyover of his property.

12

activity report was completed by DBO Genuich and the complaint to DBO Genuich, although not explicitly mentioned in the activity report, evidently came from Pearson. Speed argues that an informant's tip must comply with the Aguilar-Spinelli[11] test concerning probable cause for a search warrant.

Under the Aguilar-Spinelli test, to establish probable cause for issuance of a search warrant based upon an informant's tip detailed in an affidavit, the affidavit must demonstrate the informant's (1) basis of knowledge and (2) veracity. State v. Vickers, 148 Wn.2d 91, 111-12, 59 P.3d 58 (2002). Speed argues that the State may not avoid an inquiry into Pearson's knowledge, credibility, and veracity by simply not mentioning him or the content of what he reported in the application for a search warrant. Speed relies on State v. Lyons, 174 Wn.2d 354, 359, 275 P.3d 314 (2012) to support his assertion.

In Lyons, a judge issued a search warrant for Lyons's property based on an officer's affidavit. Id. at 357. The officer's statement noted that a "reliable and confidential source of information reported details of the criminal activity to him. Id. at 357-58. Lyons moved to suppress evidence seized from his property, arguing that the affidavit for the search warrant failed to state timely probable cause. Id. at 358. The trial court granted the motion. Id. In affirming, the Lyons court noted that even though the affidavit may be based on an unidentified informant's tip, the affidavit must contain some of the underlying circumstances

---

[11] Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); State v. Jackson, 102 Wn.2d 432, 443, 688 P.2d 136 (1984) (rejecting Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) abrogation of Aguilar/Spinelli)..

that led the informant to believe that evidence could be found at the specified location. Id. at 359. And, it noted that the affidavit must set forth the circumstances specifically enough that the magistrate can independently judge the validity of both the affiant's and the informant's conclusions. Id.

But, Lyons is plainly distinguishable. In Lyons, probable cause for the search warrant was based solely on information from a confidential source. Id. at 357. Here, the application for the search warrant was not based solely—or really much at all—on information from an informant. And, even if the warrant was technically "based on" Pearson's statement that led to the activity report, if either or both parts of the Aguilar-Spinelli test are deficient, probable cause may yet be satisfied by independent police investigation work that corroborates the informant's tip to such an extent that it supports the missing element. Vickers, 148 Wn.2d at 112; State v. Jackson, 102 Wn.2d 432, 438, 688 P.2d 136 (1984) (noting that if a tip standing alone or partially corroborated, falls short of probable cause, it still has a place in law enforcement by prompting a police investigation or further investigatory work that establishes the requisite probable cause). Here, CEO Laws's declaration conveys that information from the activity report merely prompted his independent investigation into the property. And, that he later obtained additional information about Speed's property from tax assessor records, the County's permit records, and Speed's attorney.

Moreover, where an affidavit is sufficient to establish probable cause absent information provided by the informant, the court need not address a challenge to the informant's reliability. See State v. Cord, 103 Wn.2d 361, 365, 693 P.2d 81

(1985). Here, as was the case with the aerial images in <u>Cord</u>, there was still sufficient probable cause to support evidence of criminal wrongdoing even after excising the one statement in CEO Laws's declaration about the activity report.[12]

We hold that the search warrant was valid. The district court did not commit an error of law when it denied Speed's motion to dismiss or motion to suppress the evidence found on his property during the execution of the search warrant.[13]

We affirm.

WE CONCUR:

---

[12] In a SAG, Speed makes additional arguments challenging the veracity of the informant. But, Speed largely repeats the argument already made by his attorney and adds facts not in the record. As such, this SAG is without merit. <u>See</u> <u>State v. Alvarado</u>, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (noting that arguments based on facts not in the record are not properly raised through a SAG).

[13] To the extent Commissioner Neel's ruling granting Speed's motion for discretionary review authorized this court to consider any additional issues not discussed in this opinion, we decline to reach those issues.