# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59042-5-II |
| Respondent, | |
| v. | |
| STEPHEN AARON TAYLOR, | UNPUBLISHED OPINION |
| Petitioner. | |

CRUSER, C.J.—Stephen Aaron Taylor shoved his wife into a wall, breaking her nose. The State initially charged Taylor with fourth degree assault in district court. Taylor pleaded not guilty. The State then charged Taylor with second degree assault in superior court and moved to dismiss the fourth degree assault charge. Taylor opposed the motion and also moved to withdraw his plea of not guilty to the fourth degree assault charge. The district court allowed Taylor to withdraw his not guilty plea and then plead guilty to fourth degree assault, because the State knew about X-rays showing that Taylor had broken his wife's nose before the district court arraignment but did not disclose those X-rays to Taylor.

The State appealed the order letting Taylor withdraw his not guilty plea and implicitly denying the State's motion to dismiss to superior court. The superior court reversed the district court, thereby vacating Taylor's guilty plea. After the superior court made its oral ruling, Taylor moved to dismiss the RALJ appeal for lack of jurisdiction. The superior court denied this motion

because it did not believe there was a mechanism for it to hear the motion after making its oral ruling.

Taylor appeals. He argues that the superior court did not have jurisdiction to hear the RALJ appeal and erred by not addressing the motion to dismiss the appeal, and that we should reverse the superior court. We affirm.

FACTS

I. BACKGROUND AND DISTRICT COURT PROCEEDINGS

During an argument, Taylor shoved his wife, causing her to fall face-first into a wall. One of the couple's children called the police. When an officer arrived, Taylor's wife, who is a nurse, stated that she believed her nose was broken. Taylor's wife "stated that she would get an X-Ray done at work tomorrow" and release her medical records to police. Clerk's Paper's (CP) at 13.

The State charged Taylor with fourth degree assault, a gross misdemeanor, in district court. The above information was included in the probable cause statement attached to the citation.

At an initial hearing, the district court found probable cause to charge Taylor with fourth degree assault and entered conditions of release including a no-contact order prohibiting Taylor from contacting or approaching his wife.

Several days later, after securing counsel, Taylor pleaded not guilty to fourth degree assault. That same day, the State charged Taylor with second degree assault, a felony, in superior court. The State then moved to dismiss the district court charge without prejudice under CrRLJ 8.3(a). At a hearing, the State explained that it initially charged Taylor with fourth degree assault because it did not have his wife's medical records, then decided to charge him with second degree assault after an X-ray confirmed that his wife's nose was broken. The prosecutor asserted, "the

dismissal is well within my prosecutorial discretion." 1 Verbatim Rep. of Proc. (VPR) at 19. The State also filed an order terminating the pretrial no-contact order alongside the motion to dismiss.

Taylor opposed the motion to dismiss and simultaneously moved to withdraw his not guilty plea, asking the district court to allow him to plead guilty to the fourth degree assault. Taylor argued that the State had an obligation to disclose the records showing that Taylor had broken his wife's nose, and that he could not have knowingly, intelligently, and voluntarily pleaded not guilty to fourth degree assault without knowing that he risked being charged for second degree assault if he did so. In opposition to this motion, the State explained that it held off on dismissing the fourth degree assault charge until the second degree assault charges were filed to avoid prematurely terminating the pretrial no-contact order. "And I think that is a proper exercise of my discretion to maintain that no-contact order, maintain the protection of the victim in this case." *Id.* at 34.

The district court orally granted Taylor's motion to withdraw his not guilty plea, implicitly denying the State's motion to dismiss. The district court found that because the State had evidence to support a charge for second degree assault and was "actively planning to purse a felony charge," it had an obligation to disclose the evidence to Taylor and his counsel pre-arraignment and withheld this evidence in bad faith. *Id.* at 40. As a remedy for this discovery violation, the district court stated that it would allow Taylor to withdraw his plea of not guilty and set a new arraignment for him to plead guilty.

The State moved for reconsideration, arguing that the district court's decision violated the separation of powers because the State did not offer an inappropriate reason for the motion to dismiss. The State also filed another motion to dismiss, this time "with prejudice because the Superior Court's authority supersedes this Court's." *Id.* at 44. At a hearing, the State explained

3

that it knew the X-ray existed before Taylor's district court arraignment, but did not acquire the X-ray until later. The State argued that the only information it withheld from Taylor was the prosecutor's decision to charge him with second degree assault if he did not plead guilty to the fourth degree assault. Taylor responded that the State's actions bordered on vindictive prosecution because the State told the victim that Taylor "could have entered a guilty plea or could have taken full responsibility at the time of arraignment; he didn't. And two and a half hours later they file[d] felony charges." *Id.* at 52.

The district court denied reconsideration. In a written ruling granting Taylor's motion, the district court concluded that "[t]he State has an ongoing duty to disclose evidence under the discovery rules and that duty applies regardless of when the State itself receives the evidence." CP at 54. The district court also concluded that "[a] defendant has a right to enter a not guilty plea at arraignment. However, such a plea must be made knowingly, intelligently, and voluntarily. The defendant's plea of not guilty in this case was based in part on the State's withholding of evidence from the defendant and his counsel." *Id.* The order stated that the remedy was that Taylor "must be allowed to withdraw his original plea of not guilty and be allowed the opportunity to enter a plea of guilty." *Id.*

The district court then allowed Taylor to plead guilty to fourth degree assault over the State's objection. The district court imposed a sentence of 364 days with 363 days suspended and gave Taylor credit for time served for one day.

## II. RALJ APPEAL

The State filed a notice of appeal to superior court for the district court's "rulings regarding denying the State's motion to [d]ismiss without prejudice." *Id.* at 137. In its brief, the State asserted

that it was appealing the district court's decision which "ultimately allowed the defendant to plead guilty as charged." *Id.* at 97. The State emphasized the district court's ruling "that the defendant did not knowingly, intelligently, and voluntarily plead not guilty because the State failed to provide discovery prior to arraignment." *Id.* The State argued that it was "not required to provide discovery prior to arraignment" and that the district court's ruling violated the separation of powers. *Id.* at 98. At a hearing, the State emphasized that the probable cause statement indicated that Taylor's wife "probably had a broken nose." 2 VRP at 88. The State also contended that vacating Taylor's conviction on procedural grounds would prevent double jeopardy from applying.

In response, Taylor argued that the district court did not abuse its discretion because the State had an obligation to turn over information about the ramifications of a not guilty plea the "[s]ame day" that the State received the information. *Id.* at 106.

The superior court stated that prosecutors "have broad authority to dismiss cases and not prosecute through prosecutorial discretion, and . . . the court does have oversight to make sure that a case is not being dismissed" or that a "charging decision is not for an inappropriate reason." *Id.* at 110. But the superior court "could not find anything . . . that said failure to provide full discovery at the time of arraignment was an appropriate reason for the court to . . . refuse to dismiss a case." *Id.* The superior court found that the district court abused its discretion by denying the State's motion to dismiss and remanded for further proceedings.

Eleven days after the superior court's oral ruling, but before it entered its written order, Taylor moved to dismiss the State's RALJ appeal, arguing that the superior court "was without jurisdiction under RALJ 2.2 to hear the matter." CP at 114. Taylor argued that the State appealed

only the district court's denial of its motions to dismiss, which he contended was not a final order, and that the appeal placed him in double jeopardy in violation of RALJ 2.2(c).

At a hearing, the superior court asked, "Under what mechanism is this now back in front of this Court?" 2 VRP at 113. Taylor responded that the superior court's decision was not final because it had not entered a written order, so there was "gray area wiggle room to allow the Court to at least consider the merits of the motion." *Id.* at 114. The superior court disagreed and refused to reach the merits of the motion, stating, "I don't think there is a mechanism that exists to get it in front of me properly now." *Id.* at 116.

In its written ruling, the superior court stated, "Dismissal of the charge in district court was a proper exercise of prosecutorial discretion. It was an abuse of the lower court['s] discretion to deny the State's motion to dismiss." CP at 145. "The Court further denies the respondent's motion to dismiss for lack of jurisdiction as the Court finds no legal mechanism by which to hear such motion after the court's oral ruling on the merits of the appeal but prior to the entry of the Court's written decision." *Id.* Accordingly, the superior court remanded the case to the district court to grant the State's motion to dismiss.

Taylor sought discretionary review and a commissioner of this court granted review.

ANALYSIS

Taylor argues both that the superior court did not have jurisdiction over the RALJ appeal of the district court order and that the superior court erred by reversing the district court's order. We address each contention in turn.

I. Superior Court Jurisdiction

As an initial matter, Taylor asks us to dismiss this appeal because he asserts that the superior court lacked jurisdiction to hear the State's RALJ appeal. Taylor advances several arguments in support of this contention. First, he argues that the district court's order denying the State's motion to dismiss was not appealable under RALJ 2.2(c) because it was not a final decision, "did not grant a new trial, did not arrest or vacate a judgment, and did not suppress evidence." Br. of Pet'r at 14. Second, he contends that the State's appeal was moot because it "failed to make substantive objections to the acceptance of a guilty plea and then the imposition of sentence, and did not appeal from those orders." Br. of Pet'r at 21. Third, he argues that the State's appeal implicated double jeopardy in violation of RALJ 2.2(c). Taylor also insists that the superior court erred by declining to address the merits of his motion to dismiss for lack of jurisdiction. We disagree.

RALJ 2.2(c) provides:

The State or local government may appeal in a criminal case only from the following decisions of a court of limited jurisdiction and only if the appeal will not place the defendant in double jeopardy:

(1) *Final Decision, Except Not Guilty.* A decision which in effect abates, discontinues, or determines the case other than by a judgment or verdict of not guilty, including but not limited to a decision setting aside, quashing, or dismissing a complaint or citation and notice to appear, or a decision granting a motion to dismiss under CrRLJ 8.3(c).

The State may also appeal pretrial orders suppressing evidence, orders arresting or vacating a judgment, and orders granting a new trial. And "[t]he superior court will disregard defects in the form of a notice of appeal if the notice clearly reflects an intent by a party to seek review." RALJ 2.6(f).

Here, the district court's order concluded that Taylor "must be allowed to withdraw his original plea of not guilty and be allowed the opportunity to enter a plea of guilty." CP at 54. By directing that Taylor be allowed to plead guilty, the district court's order effectively determined the fourth degree assault case. And it was clear that the State intended to review the decision that terminated its case. Accordingly, the State properly sought review of an appealable order under RALJ 2.2(c).

Taylor also argues that the State's appeal was moot because the State failed to *substantively* object to Taylor's plea or sentence. He relies on *State v. Cruz*, where the supreme court held that an appeal was moot because the State appealed an order suppressing evidence but not the dismissal order ending the State's case. 189 Wn.2d 588, 597, 404 P.3d 70 (2017). First, the State did object to the district court accepting Taylor's plea. And, as stated above, the order effectively ended the State's case. Accordingly, the appeal was not moot.

Next, Taylor contends that the State's appeal violates double jeopardy, which would bar the appeal under RALJ 2.2(c). This argument rests on a contention that the State did not appeal Taylor's judgment and sentence or object to its entry, so there was an "expectation of finality." Br. of Pet'r at 26.

The double jeopardy clause of the Fifth Amendment "bars (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Tracer*, 173 Wn.2d 708, 723, 272 P.3d 199 (2012). "The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence." *United States v. DiFrancesco*, 449 U.S. 117, 136, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980). "The defendant, of course, is charged with knowledge of . . . appeal

provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired." *Id*. When a "guilty plea was void, the trial court lacked authority to accept [the] plea and jeopardy did not attach." *Tracer*, 173 Wn.2d at 723. Here, the State properly appealed an order that effectively ended its case, so Taylor had no expectation of finality.[1] And the State challenged the procedural validity of Taylor's plea, so by reversing the district court, the superior court rendered Taylor's guilty plea void, which meant that jeopardy did not attach. Thus, the State's appeal was proper under RALJ 2.2(c) and we hold that the superior court had jurisdiction over the appeal.

Finally, Taylor argues that the superior court erred by ruling that it could not address Taylor's motion to dismiss for lack of jurisdiction, which he filed after oral argument but before the superior court entered its written order. The superior court denied the motion because it did not believe there was any mechanism for it to hear a motion to dismiss after it had ruled on the case. Assuming, without deciding, that the superior court's decision to not consider the merits of the motion to dismiss for lack of jurisdiction was erroneous, we hold that any error was harmless because the superior court had jurisdiction over the State's appeal.

Having rejected Taylor's argument that the superior court lacked jurisdiction over the RALJ appeal, we turn to the merits of the district court's decision.

---

[1] We acknowledge that the better practice would have been for the State to continually voice its objection at each stage of the district court guilty plea process to avoid any allegation of ambiguity. But under the facts of this case, where the State has appealed the initial order that effectively ended its case, continual objections were not required.

II. MERITS OF THE DISTRICT COURT'S DECISION

Taylor contends that we should reverse the superior court's ruling and affirm the district court's order denying the State's motion to dismiss. Taylor argues that the district court did not abuse its discretion in denying the State's motion to dismiss and forcing the State to prosecute the case against Taylor in district court rather than superior court. He relies on CrRLJ 8.3 to assert that the district court did not abuse its discretion by allowing him to withdraw his not guilty plea based on its finding that the State acted in bad faith by withholding the X-ray evidence. Taylor contends that the district court denied the State's motion to dismiss and allowed Taylor to plead guilty "not because of a policy disagreement about the proper charge or because of the application of an invalid local rule, but because of what it explicitly concluded to be 'bad faith' and the fact that Mr. Taylor's initial 'not guilty' plea was [not] knowing and intelligently made." Br. of Pet'r at 49. We disagree.

A.    Legal Principles

" 'RALJ 9.1 governs appellate review of a superior court decision reviewing' a district court decision." *State v. Richards*, 28 Wn. App. 2d 730, 742, 537 P.3d 1118 (2023) (quoting *State v. Brokman*, 84 Wn. App. 848, 850, 930 P.2d 354 (1997)), *aff'd*, 4 Wn.3d 83, 559 P.3d 107 (2024). "When we grant discretionary review of a RALJ decision by the superior court, we "sit[] in the same position as the [prior] court in review of the [district] court decision." *City of Seattle v. Wiggins*, 23 Wn. App. 2d 401, 406, 515 P.3d 1029 (2022) (first and second alteration in original) (quoting *State v. Weber*, 159 Wn. App. 779, 787, 247 P.3d 782 (2011)).

"Pursuant to RALJ 9.1(a), an appellate court shall review the decision of the district court to determine whether that court has committed any errors of law." *Brokman*, 84 Wn. App. at 850.

" 'We review the record before the district court, reviewing factual issues for substantial evidence and legal issues de novo.' " *Wiggins*, 23 Wn. App. 2d at 407 (quoting *State v. Rosalez*, 159 Wn. App. 173, 178, 246 P.3d 219 (2010). And we "accept those factual determinations supported by substantial evidence in the record (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction." RALJ 9.1(b). Additionally, "[w]e review a trial court's decision on a prosecutor's motion to dismiss a criminal proceeding for abuse of discretion." *State v. Agustin*, 1 Wn. App. 2d 911, 916, 407 P.3d 1155 (2018). "Misapplying the law constitutes an abuse of discretion." *Id*.

"Under Washington's constitution, governmental authority is divided into three branches—legislative, executive, and judicial—and '[e]ach branch of government wields only the power it is given.' " *State v. Rice*, 174 Wn.2d 884, 900, 279 P.3d 849 (2012) (alteration in original) (quoting *State v. Moreno*, 147 Wn.2d 500, 505, 58 P.3d 265 (2002)). "The division of governmental authority into separate branches is especially important within the criminal justice system, given the substantial liberty interests at stake and the need for numerous checks against corruption, abuses of power, and other injustices." *Id*. at 901. "First, legislative authority must be exercised to define crimes and sentences; second, executive power must be applied to collect evidence and seek an adjudication of guilt in a particular case; and third, judicial power must be exercised to confirm guilt and to impose an appropriate sentence." *Id*. "The state constitution grants inherent powers to each separate branch to undertake these functions, including the distinct role of prosecuting attorneys within the executive branch." *Id*.

"A prosecuting attorney's most fundamental role as both a local elected official and an executive officer is to decide whether to file criminal charges against an individual and, if so,

which available charges to file." *Id*. "On numerous occasions, we have acknowledged the 'long-recognized' charging discretion of prosecuting attorneys, including discretion to determine the nature and number of available charges to file." *Id*. at 903 (quoting *State v. Lewis*, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990)). And "a prosecutor's inherent charging discretion necessarily is broader than a mere consideration of sufficiency of evidence and likelihood of conviction." *Id.* at 902. "Exercise of this discretion involves consideration of numerous factors, including the public interest as well as the strength of the State's case." *Lewis*, 115 Wn.2d at 299.

" 'Judges are not free . . . to impose on law enforcement officials our personal and private notions of fairness and to disregard the limits that bind judges in their judicial function.' " *State v. Lidge*, 111 Wn.2d 845, 850, 765 P.2d 1292 (1989) (internal quotation marks omitted) (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)). For example, the Washington Supreme Court has held that a prosecutor did not have to charge a defendant after the defendant's first delivery of drugs to an informant, and was instead free to have the informant conduct multiple controlled buys, resulting in a greater number of charges against the defendant. *Lewis*, 115 Wn.2d at 299.

CrRLJ 8.3(a) provides "The court may, in its discretion, upon motion of the prosecuting authority setting forth the reasons therefor, dismiss a complaint or citation and notice." Additionally, "The court, in the furtherance of justice after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." CrRLJ 8.3(b) "[B]ecause a trial court's discretion to deny a prosecuting attorney's motion to dismiss under CrR 8.3(a) must be exercised with due regard for constitutional separation of

powers, a court may deny such a motion only when the prosecuting attorney offers an inappropriate reason." *Agustin*, 1 Wn. App. 2d at 921-22 (listing federal examples stating that a dismissal must be "clearly contrary to manifest public interest" for reasons such as " 'bribery, animus towards the victim, or a desire to attend a social event rather than trial' " for a court to deny a prosecutor's motion to dismiss (quoting *In re Richards*, 213 F.3d 773, 787 (3d Cir. 2000))).

B.      The District Court Abused its Discretion

We begin by noting that the State's motion to dismiss in this case was a CrRLJ 8.3(a) motion. The district court effectively converted this into a CrRLJ 8.3(b) motion, but then ordered the *opposite* remedy of the one contemplated by that rule. And the district court's decision was based on its determination that the State withheld evidence from Taylor in bad faith because the district court decided that "[t]he State has an ongoing duty to disclose evidence under the discovery rules and that duty applies regardless of when the State itself receives the evidence," *including pre-arraignment*. CP at 54. But as the superior court observed, the relevant rule requires only that "discoverable materials shall be made available for inspection and copying within 21 days of arraignment or within 21 days of receipt of the demand by the prosecuting authority, whichever is later." CrRLJ 4.7(a)(2). Nothing in CrRLJ 4.7 requires disclosure of discovery before a defendant's arraignment. And the State explained that it waited to dismiss the fourth degree assault charge because it did not want to prematurely terminate the pretrial no-contact order protecting Taylor's wife. This was not an inappropriate reason clearly contrary to manifest public interest. *Agustin*, 1 Wn. App. 2d at 921-22. Imposing a pre-arraignment discovery obligation on the State was an error of law, and basing the denial of a CrRLJ 8.3(a) motion to dismiss on an erroneous interpretation

13

of the law, despite the State providing an appropriate reason for the dismissal, was an abuse of discretion. *Id.* at 916.

The district court also abused its discretion to the extent that it held a not guilty plea must be knowing, intelligent, and voluntary as a condition of its acceptance by the court, and that the State prevented Taylor from entering a lawful not guilty plea because it had not yet furnished full discovery. Neither Taylor nor the district court cited any authority for this novel contention. Moreover, such a holding on our part would be extraordinary. Because criminal defendants enjoy a presumption of innocence that is only overcome by a verdict of guilty predicated on proof beyond a reasonable doubt or a knowing, intelligent, and voluntary guilty plea, a plea of not guilty is the presumptive plea. Taylor cites no case holding that a plea of *not* guilty must be knowing, intelligent, and voluntary. *Cf. State v. Ford*, 125 Wn.2d 919, 925, 891 P.2d 712 (1995) (emphasizing the trial court's role in determining whether a guilty plea is knowing, intelligent, and voluntary); *State v. James*, 108 Wn.2d 483, 489, 739 P.2d 699 (1987) (explaining that defendants have a limited right to withdraw a not guilty plea based on later developments in the case).

Furthermore, Taylor and his counsel were on notice that the victim likely suffered a broken nose because she, a nurse, told the officer writing the probable cause statement that she believed her nose was broken and intended to get an X-ray the next day, which she agreed to release to police. By entering a plea of not guilty, Taylor, with the assistance of his counsel, elected to wait and see whether the victim had suffered a broken nose, thereby necessarily incurring the risk that she had. The State, for its part, told the victim that even in spite of her broken nose, if Taylor had elected to plead guilty and take responsibility for his actions during his district court arraignment, the State would have been willing to forego prosecuting the case in superior court despite there

being probable cause for assault in the second degree. There is no indication of bad faith on the State's part in making this decision.

Finally, we find nothing in CrRLJ 8.3(b) that authorizes a district court, upon finding of arbitrary action or governmental misconduct, to *prevent* the State from seeking dismissal of the case and forcing the State to prosecute the matter in district court when it had sufficient evidence to prosecute the case in superior court. Rather, if Taylor believed the State engaged in arbitrary action or misconduct, he was free to seek dismissal on that basis in superior court. Indeed, forcing the State to unwillingly proceed with a case in district court when the State had sufficient evidence of a different charge to proceed in a different court, disregards the separation of powers. *Agustin*, 1 Wn. App. 2d at 921-22.

In sum, we hold that the superior court did not err by concluding that the district court abused its discretion by denying the State's motion to dismiss the fourth degree assault charge.

We affirm the superior court's ruling.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 59042-5-II

CRUSER, C.J.

We concur:

LEE, J.

PRICE, J.

16