[No. 56715-8.   En Banc.   September 20, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY LEWIS, *Appellant*.

*Michael H. Rosen* and *Nancy L. Talner,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for respondent.

*David Boerner,* amicus curiae for appellant.

GUY, J.—Defendant challenges the sentence he received under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A. He sold marijuana on three occasions to a police informant and attempted delivery on a fourth occasion. He asserts the trial court erred in considering the four counts of criminal conduct charged by the prosecutor in determining his offender score. He argues that the deliveries and attempted delivery constituted only one act of criminal conduct. We hold that the prosecutor acted within his discretion in charging all four criminal counts and that there was no error by the trial court as well as no violation of the SRA or of the separation of powers doctrine.

## FACTS

Defendant Dr. Jeffrey Lewis, a chiropractic doctor, delivered marijuana to a police informant on three occasions in April and May 1987. On April 24, 1987, Lewis delivered one–half pound of marijuana to the informant in a K–Mart parking lot in Federal Way. On April 30, 1987, Lewis delivered another one–half pound of marijuana to the informant in the same parking lot. On May 7, 1987, Lewis delivered a

pound of marijuana to the informant in the K–Mart parking lot. On May 13, 1987, Lewis arrived at the same parking lot to deliver one–half pound of marijuana to the informant. The police arrested Lewis at that time.

On May 13, 1987, police properly executed search warrants on three residences owned by Lewis. In one residence they seized over 100 marijuana plants, $6,000 in cash, and handguns; in another residence they seized large amounts of harvested and drying marijuana; and in the third residence they seized 471 marijuana plants. After advisement of his *Miranda* rights, Lewis admitted to the officers that all of the marijuana plants were his. The King County Prosecutor's Office charged Lewis with seven separate counts of violation of the Uniform Controlled Substances Act, RCW 69.50.

At trial, defendant moved to dismiss counts 2 through 4 on the basis that they constituted the same course of criminal conduct. The trial court found that counts 1 through 4 were all separate and distinct crimes but that counts 5, 6, and 7 were found to encompass the same criminal conduct for sentencing purposes. The court found the defendant guilty of seven counts of violation of the Uniform Controlled Substances Act and sentenced Lewis to a 43–month prison term.

Although Lewis was a first–time offender, because he was charged with all four deliveries to the police, these separate crimes were calculated into his offender score and he received a sentence in excess of the maximum recommended sentence for a first–time offender. Lewis appealed his sentence to the Court of Appeals and the issue was certified for resolution by this court.

ANALYSIS

Lewis argues that the duplicative charges against him relating to delivery and attempted delivery of marijuana should have been dismissed by the trial court and thus should not have been factored into his offender score. He reasons that because all four criminal acts were conducted

under the direction of the King County Police and occurred between the same two parties at the same location, they thus constituted the "same criminal conduct" under RCW 9.94A.400(1)(a). We decline to accept this reasoning and hold that the trial court properly applied the SRA in sentencing Lewis.

## Dismissal of Criminal Charges and the Standard of Review

■ Lewis argues that the trial court erred in not dismissing the duplicative charges against him. However, no facts supporting grounds for dismissal were asserted by defendant. Although charges may be dismissed by the court on its own motion, CrR 8.3(b), a court may not dismiss a criminal charge absent a showing of arbitrary action or governmental misconduct. *State v. Starrish*, 86 Wn.2d 200, 207, 544 P.2d 1 (1975). Furthermore, the court is limited in that it may not substitute its judgment for that of the prosecutor. *State v. Dixon*, 114 Wn.2d 857, 863, 792 P.2d 137 (1990). Defendant argues that the police setting up a series of drug buys to collect evidence against the defendant constituted governmental misconduct. However, there is no evidence in the record of police misconduct with regard to the investigation and arrest. Ultimately, discretion is given to the prosecutor's decision to charge defendant with four counts for his three deliveries and one attempted delivery of marijuana.

■■ The trial court has the authority to make the discretionary determination regarding dismissal of charges and historically dismissal is an extraordinary remedy. *State v. Cantrell*, 111 Wn.2d 385, 758 P.2d 1 (1988). This court repeatedly has held that the decision of a trial court not to dismiss charges pursuant to CrR 8.3(b) will not be overturned on appeal absent a showing of manifest abuse of discretion. *See State v. Burri*, 87 Wn.2d 175, 550 P.2d 507 (1976); *State v. Sulgrove*, 19 Wn. App. 860, 578 P.2d 74 (1978). Discretion is abused only where it can be said that no reasonable person would take the view adopted by the

court. *State v. Blight,* 89 Wn.2d 38, 41, 569 P.2d 1129 (1977). Here, there was no objection to the evidence presented that the defendant delivered or attempted delivery of quantities of marijuana to the police informant on four separate occasions. There is no showing of manifest abuse of discretion in charging four separate violations of the Uniform Controlled Substances Act. Therefore, we affirm the trial court's decision not to dismiss the multiple charges against Lewis.

### The SRA and Prosecutorial Discretion

Under the SRA, prosecutors are given great discretion in determining which charges are to be filed against a defendant. One commentator noted that "[i]t is clear the Sentencing Guidelines Commission and the Legislature intended to prevent judicial review of [the prosecutor's charging] decisions." D. Boerner, *Sentencing in Washington* § 12.24, at 12–47 (1985).

It is a long–recognized principle that prosecutors are vested with wide discretion in determining how and when to file criminal charges. *Bordenkircher v. Hayes,* 434 U.S. 357, 365, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978); *State v. Pettitt,* 93 Wn.2d 288, 294, 609 P.2d 1364 (1980). Exercise of this discretion involves consideration of numerous factors, including the public interest as well as the strength of the State's case. *United States v. Lovasco,* 431 U.S. 783, 794, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977). Under this analysis, the prosecutor had no duty to charge the defendant after the first delivery to the King County Police informant. Likewise, in his discretion, the prosecutor could charge as separate counts each of the deliveries made by the defendant. This court has held that "[w]hether the incidents are to be charged separately or brought as one charge is a decision within prosecutorial discretion." *State v. Petrich,* 101 Wn.2d 566, 572, 683 P.2d 173 (1984). In this case, charges were filed that were necessary to reflect the nature and extent of the defendant's criminal activity.

## The SRA and Equal Protection

Lewis argues that the SRA violates his equal protection rights. He reasons that although the statute appears fair on its face, it is applied arbitrarily. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). He argues that because the State can "arbitrarily decide how many counts will be used to set the offender score", Brief of Appellant, at 32, this is an arbitrary classification of a crime and not based on differences that are real in fact and reasonably related to the general purposes of criminal legislation. *State v. Mason,* 34 Wn. App. 514, 663 P.2d 137 (1983). We reject this argument.

In *Mason,* the Court of Appeals held that a statute violated the equal protection provision of the state constitution when two laws defining the same criminal conduct, one state and one local, provided different penalties. This violated the constitution because the prosecutor could prosecute under either law and reach a different punishment for the exact same conduct. In contrast, the underlying premise of the SRA is to treat similar types of criminals uniformly in the sentencing stage. All defendants who have current or prior convictions are similarly situated in the calculation of their offender score. The SRA establishes classifications of criminal sentencing into which defendants are categorized based upon their criminal offender score. There is no unequal application of the SRA standards on some invidious basis as there was in *Yick Wo.*

## Separate Criminal Conduct and the
## *Dunaway* Analysis

The central issue before this court relates to whether four acts of delivering and attempting to deliver marijuana for purchase by the same police informant at the same location constitute one crime or four crimes for purposes of calculating Lewis' SRA criminal history score. Criminal history and the severity of a defendant's crimes are the two factors used to calculate the offender's score from which the standard range is determined. A defendant's offender score is

computed from his criminal history, including prior and current convictions. RCW 9.94A.400(1)(a). The defendant is then sentenced to prison for a length of time within the standard range unless mitigating or aggravating circumstances justify a different sentence. RCW 9.94A.390.

In this case, Lewis contends his sentence should have been within the standard range for a first–time offender marijuana dealer rather than a higher range that applies to dealers with a criminal history. The sentencing court accepted Lewis' argument that the marijuana growing and drying operations in the three residences constituted the same criminal conduct, but the court declined to apply such analysis to the four drug deliveries. Thus, the court calculated Lewis' offender score at 8 for which the recommended sentence is 43 to 57 months. His sentence of 43 months is within the recommended range for that offender score.

At the time of Lewis' arrest, RCW 9.94A.400(1)(a) established the following analysis of criminal history:

> Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: *Provided,* That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime.

The applicable test to analyze whether a series of actions by a defendant encompassed the same criminal conduct was formulated by this court in *State v. Dunaway,* 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987). In *Dunaway,* the court looked at a variety of aspects of the crimes involved to categorize the crime for which the defendant was being sentenced. The *Dunaway* court concluded that:

> [T]rial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. . . . [P]art of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.

*Dunaway,* at 215.

This common law test has been codified in an amendment to the SRA. The new language defines "same criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.400(1)(a).[1]

In applying this analysis to the case at bench, it is first necessary to determine Lewis' objective intent while committing the criminal acts. Lewis contends that his criminal objective in all four transactions was to sell marijuana. Therefore, he concludes that the four crimes represent only one episode of criminal conduct. Lewis mistakes having the same objective for each act as having the same intent for criminal conduct analysis. The SRA's single criminal conduct analysis has approached a single intent as entailing numerous offenses committed as part of a scheme or plan, with no substantial change in the nature of the criminal objective. *State v. Boze*, 47 Wn. App. 477, 480, 735 P.2d 696 (1987). In Lewis' case, his acts were not part of a single criminal conduct because the commission of one drug deal did not further the commission of the other drug deals, and they were not part of a recognizable scheme or plan.

Lewis also argues that the time and place element of the *Dunaway* test is satisfied because the drug delivery and attempted delivery occurred at the same location between the same two parties. However, the same time and place analysis applies only when there is a continuing sequence of criminal conduct. Some examples of when the analysis has been utilized to determine whether multiple criminal acts had occurred are when the defendants committed armed robbery and attempted to murder their victims and when a

---

[1]This amendment was not effective until July 26, 1987. This court in *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987) determined that this amendment is not given a retroactive effect. Lewis conducted the deliveries of the marijuana prior to the effective date of the statute, but his trial and sentencing procedure occurred after the effective date. However, neither counsel raised this issue and both referred to RCW 9.94A.400(1)(a) as the applicable test.

defendant kidnapped two women in order to rob them. *Dunaway*, at 209. *See also State v. Burns*, 114 Wn.2d 314, 788 P.2d 531 (1990).

A case with facts analogous to the case at bench is *State v. Boze, supra*, in which the Court of Appeals upheld the trial judge's consideration of two earlier counts of drug delivery as part of the defendant's criminal history when computing the standard range for the third count. On three separate occasions Boze sold cocaine to the same undercover police officer at Boze's residence. Like Lewis, Boze had no prior felony convictions. Although this court did not review the *Boze* decision, it has cited the *Boze* analysis with approval. *See Dunaway*, at 214. The reasoning in the *Boze* decision applies to the facts of this case and, as with *Boze*, Lewis' prior drug sales can be calculated into his offender score.

As noted in *Dunaway*, at 215 n.5, our analysis reflects the intended interpretation of the Washington State Sentencing Guidelines Commission. The Commission reaffirmed its support of this analysis by requesting that the House of Representatives amend RCW 9.94A.400(1)(a) effectively codifying the *State v. Edwards*, 45 Wn. App. 378, 380–82, 725 P.2d 442 (1986), *overruled on other grounds in State v. Dunaway, supra*, analysis. House Journal, 50th Legislature (1987), at 176. Thus, the current statute pertaining to "same criminal conduct" expressly establishes that to constitute the same criminal conduct, there must be the same criminal intent for each of the crimes committed, they must be committed at the same time and place, and involve the same victim. RCW 9.94A.400(1)(a).

Because the four violations of the Uniform Controlled Substances Act by the defendant were carried out on separate dates and Lewis formed a separate objective criminal intent to execute each act, his crimes were not "same criminal conduct". Furthermore, RCW 9.94A.400 expressly gives

the prosecutor authority to charge separate current crimes in determining the offender score of a defendant. We therefore affirm the trial court's decision permitting consideration of all four drug deliveries as separate crimes for sentencing purposes.

Lewis also argues that the SRA violates the constitutional doctrine of separation of powers because the prosecutor has usurped both the legislative power to set sentence ranges and the judicial power to retain structured discretion in sentencing by "manipulating" the number of counts charged against a defendant. This theory was also advocated by the amicus, Professor Boerner, who argues that permitting the prosecutor to exercise discretion in charging multiple counts controverts the purpose of the SRA. He argues that by having the discretion to charge multiple counts prosecutors are effectively usurping the Legislature's function in determining how long the defendant will be incarcerated. He says that the prosecutors have too much leeway to bootstrap a defendant into a longer sentence by charging additional counts.

In his amicus brief, Professor Boerner argues that the real question before this court is not the length of Lewis' sentence but rather whose right is it to determine the sentence length. Professor Boerner asserts that the SRA's intent was to instruct prosecutors that they not only need not, but that they should not file every charge that is legally possible. Professor Boerner quotes the SRA, stating:

ALL OTHER UNCLASSIFIED FELONIES

. . . .
(1) The prosecutor should file charges which adequately describe the nature of defendant's conduct. . . .

. . . .
This standard is intended to direct prosecutors to charge those crimes which demonstrate the nature and seriousness of a defendant's criminal conduct, but to decline to charge crimes which are not necessary to such an indication. Crimes which do not merge as a matter of law, but which arise from the same course of conduct, do not all have to be charged.

RCW 9.94A.440(2).

Professor Boerner argues that the charging standards established by the Legislature are perverted by the prosecutorial policy adopted by the King County Prosecutor's Office. The published policy provides:

> 2. Multiple Counts/Stipulation to Uncharged Counts.
>     a. Initial Filing—Number of Counts
> One count normally should be filed for each crime up to the number of counts necessary for the defendant's offender score to reach the "9 or more" category if the most serious crime is either seriousness level VIII, IX or X. One count should be filed for each crime up to a maximum of three counts for any other crime covered by this section unless the offender has committed a major VUCSA [violation of the Uniform Controlled Substances Act] in which case all chargeable counts normally shall be filed.

Brief of Respondent, at 14–15.

Professor Boerner reasons that the prosecutor, by filing "all chargeable counts", when the offender has committed a "major VUCSA" operates to substitute the prosecutor's judgment for judicial discretion. The prosecutor's office is, under Professor Boerner's reasoning, preempting the sentencing range established in the SRA by determining that a defendant is particularly culpable and thus warranting being charged with multiple counts.

Professor Boerner does not acknowledge the court's inherent authority to dismiss charges if they are not substantiated. Furthermore, the Legislature provided a number of limitations within the SRA on the discretion of the prosecutor, and the prosecutor only acts within the authority delegated by the Legislature. Professor Boerner claims that the prosecutor is usurping legislative functions by charging excessive counts and influencing the sentence of the defendant. However, a prosecutor may only charge a count if he or she has evidence indicating the defendant committed the crime, and the categories into which criminals fall for sentencing purposes are clearly established by the Legislature, not the prosecutor.

As well as Professor Boerner's argument, Lewis relies on this court's decision in *State v. Ammons,* 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796, *cert. denied,* 479 U.S. 930

(1986). While *Ammons* does hold that the fixing of penalties or punishments for criminal offenses is a legislative function, it also provides that the Legislature may delegate functions to the prosecutor so long as there are "standards for guiding decision making . . . to prevent an unconstitutional delegation of the *legislative* authority to alter the sentencing process.'" *Ammons,* at 180–81 (quoting *State ex rel. Schillberg v. Cascade Dist. Court,* 94 Wn.2d 772, 621 P.2d 115 (1980)). The *Ammons* decision expressly held that the SRA does not violate the separation of powers doctrine.[2]

Defendant argues that the SRA is unconstitutional based on the *Cascade Dist. Court* decision. That case held a statute violated the separation of powers doctrine when it unconstitutionally delegated the power to defer prosecution to the prosecutor. *Cascade Dist. Court,* at 781. Const. art. 4, § 1 vests judicial power in the courts of Washington, not in the office of the prosecutor. The court held that the power to continue an arraignment is fundamentally a judicial function. *Cascade Dist. Court,* at 776. However, the court did explain that some judicial functions may be delegated to the prosecutor if there are sufficient standards. The court stated that "[w]here the prosecutor makes an initial eligibility determination based on clear standards, and such determination is subject to judicial review, the risk to a defendant is greatly reduced and the chance enhanced that the legislative purpose . . . will be

---

[2]The United States Supreme Court, in determining a challenge to the Federal Sentencing Reform Act of 1984, held that it does not constitute an excessive delegation of legislative power by Congress to the Sentencing Commission and that the act does not violate the separation of powers doctrine. *Mistretta v. United States,* 488 U.S. 361, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989). *See also United States v. Kinsey,* 843 F.2d 383 (9th Cir.), *cert. denied,* 487 U.S. 1223 (1988); *United States v. Brittman,* 872 F.2d 827 (8th Cir.), *cert. denied,* 110 S. Ct. 184 (1989). As noted by the Eighth Circuit, a law fixing punishment for a crime is not unconstitutional merely because it removes discretion from the judiciary to sentence as it might wish, even if the net effect of the punishment shifts enormous discretion to the hands of the prosecutor who can choose or refuse to indict on multiple felonies. *United States v. McClinton,* 815 F.2d 1242, 1244 (8th Cir. 1987).

achieved." *Cascade Dist. Court,* at 779. The current case is not a situation in which the prosecutor has unfettered discretion. The SRA establishes guidelines and limitations on the prosecutor's charging decision.

CONCLUSION

The prosecutor's filing decision does not subvert the structure and intent of the SRA. The multiple count information here was filed within the prosecutor's filing standards, standards promulgated to secure the integrity of the SRA's sentencing framework. The charging decision adequately reflects the defendant's actions and ensures that his punishment is "commensurate with the punishment imposed on others committing similar offenses" and "[e]nsure[s] that the punishment for a criminal offense is proportionate to the seriousness of the offense". RCW 9.94A.010. We affirm the sentence imposed by the trial court.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.