# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>MONTREAL LEANTHONY MORGAN SR.,<br><br>Petitioner. | No. 102643-9<br><br>EN BANC<br><br>Filed: <u>January 23, 2025</u> |

STEPHENS, C.J.— Washington's crime victims compensation act (CVCA), chapter 7.68 RCW, provides benefits to crime victims and their families for expenses resulting from criminal acts. Payments are administered by the Department of Labor and Industries (L&I), which is authorized to seek a court order of restitution for benefits paid. The restitution statute, RCW 9.94A.753, governs court orders of restitution in criminal cases as part of a responsible defendant's judgment and sentence. Under RCW 9.94A.753(7), a court must hold a hearing and enter a restitution order whenever a victim is entitled to CVCA benefits. The issue in this case is whether the restitution statute affords the court any discretion to modify the amount owed to L&I as reimbursement for CVCA benefits paid.

Montreal Morgan pleaded guilty to crimes that resulted in Fabian Alvarez's death. At his restitution hearing, the State requested $10,480 in restitution for CVCA benefits paid by L&I toward Alvarez's medical and funeral expenses. Morgan asked the trial court to reduce the amount of restitution due to mitigating factors, including his youth and role in the crime, but the court believed RCW 9.94A.753(7) limited its discretion. The trial court ordered the full amount of restitution requested for CVCA benefits, and the Court of Appeals affirmed. We granted review.

Applying settled principles of statutory construction, we hold that RCW 9.94A.753 does not allow a trial court discretion to modify the amount of restitution owed to L&I for CVCA benefits. Accordingly, we affirm the Court of Appeals and uphold Morgan's order of restitution.

## BACKGROUND

In June 2020, Montreal Morgan participated in a home invasion robbery that resulted in the death of Fabian Alvarez, a resident of the home. Alvarez's funeral was held two weeks later, paid for by family members. The next month, L&I paid $6,170 toward the cost of Alvarez's funeral expenses under the CVCA.[1] L&I also paid $4,310 directly to Harborview Medical Center for Alvarez's medical expenses.

---

[1] L&I reimbursed Alvarez's family members $3,584 and paid the funeral home $2,586. Although the total funeral cost exceeded this amount, $6,170 was the maximum allowable for funeral expenses under the CVCA at the time. *See* RCW 7.68.070(10) (providing a method to adjust the maximum amount allowed under the program to account for inflation).

On January 20, 2022, Morgan pleaded guilty to conspiracy to commit murder in the second degree and unlawful possession of a firearm in the second degree. As part of the plea agreement, Morgan agreed to the imposition of restitution, with the amount to be determined at a later date.

At the restitution hearing on September 7, 2022, the State requested $10,480 to reimburse L&I for the total amount of financial benefits paid under the CVCA as a result of Alvarez's death. The State submitted L&I's proof of payments with its request. Alvarez's family did not seek separate restitution.

Morgan did not dispute that his actions caused the losses paid for from the CVCA program. Rather, Morgan asked the trial court to exercise its discretion and order a lower amount of restitution, citing his youthfulness at the time of the crime, his limited earning potential, his mental health conditions, and his role in the crime relative to other participants. The trial court responded that it believed RCW 9.94A.753(7) constrained its discretion to impose less than the amount requested as reimbursement for the benefits L&I paid under the CVCA. The court accordingly refused Morgan's request and ordered him to pay, jointly and severally with his codefendants, $10,480 in restitution to the CVCA program.

Morgan appealed, and the Court of Appeals affirmed, agreeing with the lower court that RCW 9.94A.753(7) does not afford trial courts discretion to impose less

restitution than the amount of CVCA benefits paid. *State v. Morgan*, 28 Wn. App. 2d 701, 707, 538 P.3d 648 (2023), *review granted*, 2 Wn.3d 1036 (2024). Morgan filed a petition for review, which we granted. We accepted an amicus brief from L&I, which administers the CVCA program.

## ANALYSIS

This case concerns the proper interpretation of the restitution statute, RCW 9.94A.753. Generally, the statute affords a trial court broad discretion to craft a restitution order, and the court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. Tobin*, 161 Wn.2d 517, 523, 527, 166 P.3d 1167 (2007) (noting abuse of discretion occurs when a trial court applies "incorrect legal analysis or other error of law"). However, statutory interpretation poses a pure question of law and our review is de novo. *State v. Gray*, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012).

RCW 9.94A.753(7) states:

> Regardless of the provisions of subsections (1) through (6) of this section, the court shall order restitution in all cases where the victim is entitled to benefits under the [CVCA], chapter 7.68 RCW. If the court does not order restitution and the victim of the crime has been determined to be entitled to benefits under the [CVCA], [L&I], as administrator of the crime victims' compensation program, may petition the court within one year of entry of the judgment and sentence for entry of a restitution order. Upon receipt of a petition from [L&I] the court shall hold a restitution hearing and shall enter a restitution order.

RCW 9.94A.753(3)(b) addresses restitution owed specifically to insurers and states agencies. It states:

> [T]he court may determine that the offender is not required to pay, or may relieve the offender of the requirement to pay, full or partial restitution . . . where the entity to whom restitution is owed is an insurer or state agency, except for restitution owed to [L&I] under chapter 7.68 RCW, if the court finds that the offender does not have the current or likely future ability to pay.

RCW 9.94A.753(3)(b).

The parties agree that the statutory scheme requires restitution where a victim is entitled to CVCA benefits. And they agree that upon a request for restitution from L&I, the court must hold a hearing and enter a restitution order. But the parties do not agree about whether the court has discretion to determine the amount of restitution to order. Morgan argues that the statute is silent with respect to the amount of restitution a court may impose and that to hold otherwise impermissibly adds words to the statute. The State counters that the statutory framework as a whole requires an award of restitution in the amount of benefits paid by L&I under the CVCA, and that if the legislature intended to make the amount discretionary, then it would have explicitly said so, as it did in other provisions of the statute.

To address the parties' arguments and properly construe RCW 9.94A.753, we begin with foundational principles of statutory interpretation. Our fundamental

objective "is to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001))). The first step in interpreting a statute is to examine its plain language. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). When a statute's meaning is plain on its face, we "must give effect to that plain meaning as an expression of legislative intent." *Campbell*, 146 Wn.2d at 9-10. We look to "the ordinary meaning of the language in the context of related statutory provisions, the entire statute, and related statutes." *AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 87, 546 P.3d 385 (2024). We need not rely on other interpretive tools, such as legislative history, when a statute is unambiguous. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018) (citing *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013)).

Here, we hold that RCW 9.94A.753(7) is unambiguous. The plain language of the statute, when read in context with related provisions of the restitution statute and the CVCA, requires the court to order restitution in the amount of benefits paid by L&I through the CVCA program.

1.     In the context of RCW 9.94A.753, the absence of discretionary language in RCW 9.94A.753(7) plainly indicates that a court's order of restitution must reflect the amount of CVCA benefits paid

To properly interpret the restitution statute, it is important to first consider its relationship to other statutes governing legal financial obligations (LFOs). Under

6

the Sentencing Reform Act of 1981 (SRA), LFOs are part of an offender's sentence. RCW 9.94A.760(1). When imposing LFOs, a trial court must designate the amounts owed for restitution, costs, fines, and other assessments required by law. *Id.* Restitution is prioritized and treated differently from other LFOs. For example, an offender is not required to pay costs if indigent but must still pay restitution. *Id.* When a court clerk receives an offender's LFO payment, victim restitution is always paid first, followed by other forms of restitution, and lastly costs. RCW 9.94A.760(2). Unlike other LFOs, which may be enforced only within 10 years of the offender's release or entry of the judgment and sentence, the court retains jurisdiction over restitution until the obligation is fully satisfied. RCW 9.94A.760(5)(c), (d). These statutory distinctions clearly indicate that restitution is intended to be treated independently from other LFOs.

The purpose of restitution is "both to rehabilitate the defendant and to compensate the victim." *State v. Barbee*, 193 Wn.2d 581, 588, 444 P.3d 10 (2019) (citing *Gray*, 174 Wn.2d at 929-30). We interpret the restitution statute consistent with the SRA's purpose to "'[p]romote respect for the law by providing punishment which is just.'" *State v. Davison*, 116 Wn.2d 917, 922, 809 P.2d 1374 (1991) (alteration in original) (quoting RCW 9.94.010(2)). In *Davison*, we rejected the view that the statute must be strictly construed in favor of defendants, insisting on an

interpretation that furthers the legislature's broad intent to allow restitution. *Id.* at 920.

We recognize that RCW 9.94A.753 generally grants a trial judge "considerable discretion" in determining restitution, which may range from as little as nothing in extraordinary circumstances to as much as double the offender's gain or the victim's loss. *State v. Kinneman*, 155 Wn.2d 272, 282, 119 P.3d 350 (2005); *see also State v. Enstone*, 137 Wn.2d 675, 680, 974 P.2d 828 (1999) ("[The restitution] statute unambiguously provides a trial court with the discretion to order a defendant to pay restitution for the expenses that are caused by his or her criminal acts."); *Gray*, 174 Wn.2d at 925 ("RCW 9.94A.753 grants trial courts 'broad power' to order and modify restitution." (quoting *Enstone*, 137 Wn.2d at 679)).

The statute's grant of discretion is evident in several provisions. RCW 9.94A.753(5) states that when a person is convicted of an offense that "results in injury to any person or damage to or loss of property," the court shall order restitution "unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment." The statute does not specify what constitutes extraordinary circumstances, leaving it to the court to ultimately decide when to impose or withhold restitution.

RCW 9.94A.753(1) permits a court to extend the application period beyond 180 days if, in the court's judgment, good cause exists for the extension. In addition,

subsection (1) does not require the court to follow a strict formula when setting a defendant's monthly restitution payment amount; rather, it directs the court to "take into consideration the total amount of the restitution owed[;] the offender's present, past, and future ability to pay[;] as well as any assets that the offender may have." RCW 9.94A.753(1).

RCW 9.94A.753(3) allows for a broad range in the amount of restitution a court may impose, including up to "double the amount of the offender's gain or the victim's loss from the commission of the crime."

When considered together, subsections (1), (3), and (5) plainly grant the sentencing court wide latitude in determining when restitution is appropriate and the amount it may order.

Morgan argues that sentencing courts have "inherent" discretion under the restitution statute and this should extend to subsection (7). The plain language suggests otherwise. Subsection (7) lacks the discretionary language present in subsections (1), (3), and (5), and more importantly, it does not apply to general orders of restitution. Rather, subsection (7) concerns a distinct type of restitution: restitution ordered as reimbursement to L&I for CVCA benefits provided to crime victims. The legislature has consistently treated this category of restitution as unique, and the specific language in subsections (7) and (3)(b) indicates the

legislature intended to prevent courts from modifying the amount of restitution reflecting CVCA benefits paid.

RCW 9.94A.753(7) states, "Regardless of the provisions of subsections (1) through (6) of this section, the court shall order restitution in all cases where the victim is entitled to benefits under the [CVCA]. . . . Upon receipt of a petition from [L&I], the court shall hold a restitution hearing and shall enter a restitution order."

There is no language in subsection (7) granting the court discretion to modify the amount of benefits to which a victim is entitled. There is also no language that requires or permits a court to consider "exceptional circumstances" or other mitigating factors such as the defendant's ability to pay. Morgan argues that because subsection (7) does not specify the term "full amount," we should read the statute as allowing courts to retain their general discretion to determine restitution amounts. However, it is the absence of express discretionary language, which is present in other provisions of the statute, that is most significant. *See United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984) ("[W]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent.").

Beyond the presumption that different language conveys different intent, recent amendments strongly support reading the legislature's omission of discretionary language with respect to CVCA benefits as a deliberate choice to

10

prohibit modification of this type of restitution. In 2022, the legislature amended RCW 9.94A.753 to add subsection (3)(b), which affords courts the discretion to reduce restitution owed to insurers and state agencies based on an offender's inability to pay. *See* LAWS OF 2022, ch. 260, § 3. Subsection (7) was not amended. The new, remedial language provides that "if the court finds that the offender does not have the current or likely future ability to pay," then the court "may determine that the offender is not required to pay, or may relieve the offender of the requirement to pay, full or partial restitution . . . *except for restitution owed to* [*L&I*] under chapter 7.68 RCW." RCW 9.94A.753(3)(b) (emphasis added).[2]

This subsection, enacted just two years ago, plainly carves out restitution for CVCA benefits administered by L&I, from other categories of restitution. And this carve out in subsection (3)(b) reinforces the conclusion that restitution ordered under the CVCA cannot be modified by the sentencing court. *See Gray*, 174 Wn.2d at 928 ("[T]he legislature knows how to limit a court's discretion to modify restitution.").

In the same bill, the legislature amended another statute, RCW 10.82.090, to give courts the flexibility to waive or reduce the interest on restitution. *See* LAWS OF 2022, ch. 260, § 12. Unlike RCW 9.94A.753(3)(b), this amendment does not

---

[2] The legislature added identical provisions, including the exception for restitution owed to L&I, to the sentencing guidelines for district courts under RCW 3.66.120(2), suspended sentences under RCW 9.92.060(3), and conditions of probation under RCW 9.95.210(4).

include an exception for interest on restitution owed to L&I. RCW 10.82.090(2) states, "The court may elect not to impose interest on *any* restitution the court orders." (Emphasis added.)[3] The contrast between the two added provisions—one prohibiting courts from reducing restitution owed for CVCA benefits, while the other allowing for discretion to modify an amount—supports the conclusion that when the legislature intends to provide discretion in the restitution statute, it does so expressly.

After oral argument, Morgan submitted a statement of additional authorities, citing *Bostock v. Clayton County*, 590 U.S. 644, 670, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020), to argue that we should not consider subsequent legislative changes to other statutory provisions when determining the plain language of subsection (7). In *Bostock*, the United States Supreme Court considered the meaning of the word "sex" in Title VII. As part of its analysis, the Court declined to consider the reasons why Congress adopted certain laws referencing sexual orientation while not also amending Title VII to include sexual orientation as a protected characteristic. The Court explained that "speculation about why a later Congress declined to adopt new

---

[3] The amended statute requires that before waiving the interest on restitution, the court must consider the offender's indigency, available funds, homelessness, mental health, other financial obligations, and whether the victim will suffer hardship if restitution interest is not imposed. RCW 10.82.090. The court "may also consider any other information that the court believes, in the interest of justice, relates to not imposing interest on restitution." *Id*.

legislation offers a 'particularly dangerous' basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt." *Id.*

The situation in this case is quite different. Here, we are not considering the legislative history behind the subsequent enactment of unrelated laws or speculating as to why the legislature did not amend subsection (7). Rather, our interpretation rests on the plain language of related provisions in the restitution statute that are consistent with the overall statutory scheme. To fully interpret subsection (7), we must read it in the context of the entire restitution statute, including subsection (3)(b), as well as the related provision concerning the payment of restitution interest in RCW 10.82.090. *See AURC III, LLC*, 3 Wn.3d at 87 ("We discern plain language from the ordinary meaning of the language in the context of related statutory provisions, the entire statute, and related statutes.").

Read as a whole, the restitution statute does not afford courts discretion to modify amounts owed for CVCA benefits. Key discretionary language found in other provisions of the restitution statute and related statutes indicates that the absence of discretionary language in RCW 9.94A.753(7) is intentional. When ordering restitution to reimburse benefits paid to crime victims, the restitution statute plainly provides that the court must impose restitution reflecting the CVCA benefits to which the victim is entitled.

2.     The CVCA statutory scheme further indicates that the legislature intended the amount of restitution to match CVCA benefits paid by L&I

Because the restitution statute RCW 9.94A.753(7) requires courts to order restitution in "all cases where the victim is entitled to benefits under the [CVCA], chapter 7.68 RCW," we also consider its language in the context of the CVCA to which it refers.

The purpose of the CVCA is to provide "benefits to innocent victims of criminal acts." RCW 7.68.030(1). The act defines a "victim" to mean "a person who suffers bodily injury or death as a proximate result of a criminal act of another person." RCW 7.68.020(16). "Each victim . . . or the victim's family or beneficiary in case of death of the victim, are eligible for benefits." RCW 7.68.070(1). The amount of benefits L&I pays on behalf of a victim is directed by statute. Benefits include payment of medical expenses, lost wages, funeral expenses, and mental health services. *See* RCW 7.68.070. Each category of benefit is subject to individual statutory caps, with a maximum of $40,000 per injury, excluding medical expenses, which are capped at $150,000. RCW 7.68.085.

The CVCA program is primarily funded by a federal grant from the U.S. Department of Justice, with additional support from the state general fund and inmate phone fees.[4] Restitution payments from criminal defendants may also play

---

[4] How We're Funded¸ DEP'T OF LAB. & INDUS., https://lni.wa.gov/claims/crime-victim-claims/lawsuits-settlements-and-insurance/how-we-re-funded.

a role in financing the CVCA program, though research generally shows that only a small fraction of court-imposed restitution is ever collected.[5]  L&I must operate the CVCA program within legislative appropriations, so funding, and subsequently benefits, may be reduced if there is a deficit.  RCW 7.68.015, .030(2)(g), (i).

Not every victim of a criminal act is eligible to receive CVCA benefits.  To qualify, a victim, or someone on their behalf, must file a police report within one year of the criminal act and submit an application to L&I within three years, though extensions may be granted for good cause.  RCW 7.68.060(1).  However, even with a timely filing, a victim may be disqualified for other reasons, such as if the injury occurred while they were committing or attempting to commit a felony or if they have outstanding LFOs.  RCW 7.68.061, .060(4)(b).  As the program's administrator, L&I reviews applications and distributes benefits according to the terms and limits of the CVCA.

RCW 7.68.120 governs L&I's process for seeking reimbursement for CVCA benefits.  Under this provision, any payment of benefits to or on behalf of a qualifying victim "creates a debt due and owing to [L&I] by any person

---

[5] *See* Bryan L. Adamson, *Debt Bondage: How Private Collection Agencies Keep the Formerly Incarcerated Tethered to the Criminal Justice System*, 15 NW. J. L. & SOC. POL'Y. 305, 330-31 (2020) ("According to data compiled by the Washington Administrative Offices of the Courts for the years 2014-2016, the LFOs which were actually paid into the courts woefully trail behind the LFOs imposed.  Of the over $130 million of LFOs imposed in courts of general jurisdiction, only $7.8 million or 6% has been paid.").

found to have committed the criminal act in either a civil or criminal court proceeding in which he or she is a party." RCW 7.68.120(1). If no restitution order has been entered and a person is found responsible for the criminal act that results in the payment of benefits to a victim, L&I must petition the court for entry of a restitution order within one year of the sentence. *Id.*

While chapter 7.68 RCW governs L&I's administration of the CVCA program, RCW 9.94A.753(7) governs the actions of sentencing courts in criminal cases, which follow a separate process. RCW 9.94A.753(7) states, "Upon receipt of a petition from [L&I], the court shall hold a restitution hearing and shall enter a restitution order." A court "shall order restitution in all cases where the victim is entitled to benefits under the [CVCA]." *Id.*

The amount of benefits to which a victim may be entitled under the CVCA is statutorily determined. Benefits reflect the actual cost of the victim's qualifying expenses incurred as a result of a crime, subject to statutory caps. *See* RCW 7.68.070. As the State confirmed at oral argument, the trial court orders restitution owed to L&I based on supporting documentation that verifies the payment of these benefits.[6] In other words, "benefits" constitute a specific amount. Therefore, when

---

[6] Wash. Sup. Ct. oral arg., *State v. Morgan*, No. 102643-9 (Sept. 12, 2024), at 30 min., 16 sec., video recording by TVW, Washington State's Public Affairs Network ("There has to be substantial credible evidence presented that the amount being requested by CVC [(crime victims compensation)] was the amount that it paid to an entitled person."), https://tvw.org/video/washington-state-supreme-court-2024091109/.

RCW 9.94A.753(7) requires a court to order restitution in "all cases where the victim is entitled to benefits under the [CVCA], chapter 7.68 RCW," the statute is referring to a specific debt owed, not a general obligation that the court later determines in its discretion.

Reading restitution for CVCA benefits as encompassing not a general obligation but a debt in a specific dollar amount is consistent with the history and purposes of the CVCA. The legislature enacted the CVCA in 1973 "to provide a method of compensating and assisting those residents of the state who are innocent victims of criminal acts and who suffer bodily injury or death as a consequence thereof." LAWS OF 1973, 1st Ex. Sess., ch. 122, § 1; *see Haddenham v. State*, 87 Wn.2d 145, 152, 550 P.2d 9 (1976) ("The legislature has determined that the number of innocent victims injured is substantial, that their ability to be compensated under existing law is somewhat sporadic, and that there ought to be a uniform procedure for compensating these innocent victims on a fair basis.") In structuring the CVCA, the legislature directly incorporated entire sections of chapter 51 RCW, which governs the workers' compensation program. *See, e.g.*, LAWS OF 1973, 1st Ex. Sess., ch. 122, § 2(3) (" '[V]ictim' shall be interchangeable with 'employee' or 'workman' as defined in chapter 51.08 RCW."), § 6 ("For the purposes of applying for benefits under this chapter, the rights, privileges, responsibilities, duties, limitations and procedures contained in RCW 51 . . . shall apply."), § 7(4) ("The benefits established

17

upon the death of a workman and contained in RCW 51 . . . shall be the benefits

obtainable under this chapter . . . ."). The legislature intended to "make certain" that

like workers' compensation for injured workers, the CVCA provides innocent crime

victims with benefits for expenses incurred as a result of a crime. *See id.* § 1, § 7(2).

Over the years, the legislature has steadily expanded the scope of the CVCA

program to increase both the number of eligible recipients and the monetary amount

of benefits provided. Amendments to chapter 7.68 RCW have extended the

application period for victims, broadened eligibility criteria, raised statutory caps,

and introduced a method to adjust these caps for inflation.[7] The legislature's

ongoing efforts to strengthen and protect the CVCA program demonstrate its

commitment to ensuring that "victims of crimes are made whole after suffering

losses" and defendants "fulfill their responsibility to compensate victims for losses

resulting from their crimes." *State v. Gonzalez*, 168 Wn.2d 256, 265, 226 P.3d 131

---

[7] For example, in 1990, the legislature added a provision to the CVCA, extending the time limit to file a police report from 72 hours to 12 months. LAWS OF 1990, ch. 3, § 501(1)(b). In 1992, the legislature extended benefits to immediate family members or dependents of homicide victims. LAWS OF 1992, ch. 203, § 1(17). In 1996, the legislature increased the application period for benefits from one year to two years as well as added an exception to the time limit for good cause. LAWS OF 1996, ch. 122, § 4(1)(a). In 2011, the legislature removed the references to the workers compensation program, chapter 51 RCW, and directly incorporated the program's procedures and benefits into the CVCA. *See* LAWS OF 2011, ch. 346. The legislature intended the change to "streamline and provide flexibility" to the administration of benefits as well as "help the largest number of crime victims as possible." *Id.* § 1. In 2017, the legislature extended the time period for which an individual could receive reimbursement for funeral expense from 12 months to 24 months and included a method to account for inflation to increase the statutory maximum. LAWS OF 2017, ch. 235, § 5(9). In 2020, the legislature increased the application period from two years to three years. LAWS OF 2020, ch. 308, § 1(a).

(2010). This brief overview of the CVCA provides context to better understand the related provisions of the restitution statute. The legislature's consistent bolstering of CVCA benefits supports our reading of RCW 9.94A.753(7) as not affording discretion to sentencing courts to modify the amount of restitution owed to L&I.

3. We are unpersuaded by Morgan's statutory interpretation arguments based on constitutional avoidance and the rule of lenity

In his supplemental brief, Morgan argues that principles of constitutional avoidance and the rule of lenity compel a statutory interpretation that grants courts discretion over the amount of restitution. Specifically, he contends that interpreting RCW 9.94A.753(7) to deny discretion would violate due process and the separation of powers, and that the rule of lenity supports a strict construction of the statute in his favor.[8] We have an obligation to properly construe statutes in a way that aligns with sound principles of interpretation and avoids constitutional infirmity. *See Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015) ("We construe statutes to avoid constitutional doubt." (citing *State v. Robinson*, 153 Wn.2d 689, 693-94, 107 P.3d 90 (2005))). However, on their merits, Morgan's arguments fail. Constitutional avoidance does not compel reading RCW

---

[8] We now deny the State's motion to strike these arguments as new. While Morgan's reliance on constitutional avoidance principles and the rule of lenity expand on his earlier statutory interpretation arguments, he is not belatedly introducing new constitutional claims or improperly expanding the issues on review.

9.94A.753(7) to give courts discretion over the amount of restitution. Nor does the rule of lenity support Morgan's interpretation.

First, our reading of the statute does not implicate the due process concerns Morgan identifies. Legislation may appropriately set criminal punishments, including legal financial obligations, without granting courts discretion. *Cf. State v. Curry*, 118 Wn.2d 911, 918, 829 P.2d 166 (1992) (noting mandatory LFOs are constitutional so long as "there are sufficient safeguards in the current sentencing scheme to prevent imprisonment of indigent defendants"). Moreover, the restitution statute does not allow the court to impose a financial obligation without procedural safeguards, as it must hold a hearing at which the defendant can challenge the propriety of any restitution order consistent with the statutory scheme. *See* RCW 9.94A.753(7).

Morgan contends that without the ability to challenge the amount of restitution, these court hearings are meaningless. We disagree. Restitution for CVCA benefits may be contested on several grounds, such as whether a victim qualifies to receive benefits or whether the ordered amount accurately reflects the benefits L&I paid. Moreover, restitution may be ordered only for damages causally connected to the defendant's crime, and a defendant may dispute causation. *Kinneman*, 155 Wn.2d at 286. Here, Morgan did not dispute causation and L&I presented a claim for restitution in the amount of CVCA benefits paid, accompanied

20

by receipts for the victim's allowable expenses. The court entered an order in that exact amount, consistent with RCW 9.94A.753(7).

Additionally, the mandatory provisions of the statute applicable to court-ordered restitution do not leave defendants without other recourse to seek relief from payment. A defendant may petition L&I to reduce the amount owed, using the CVCA process that allows L&I to "waive[], modif[y] downward or otherwise adjust[]" the amount owed to L&I in the "interest of justice, the well-being of the victim, and the rehabilitation of the individual." RCW 7.68.120(5). When making this determination, L&I considers factors such as a defendant's ability to pay, employment status, and the circumstances surrounding the criminal act. WAC 296-30-120. The adjusted amount becomes the defendant's obligation, and once it is fully paid, L&I files a satisfaction of judgment with the court.[9]

We also reject Morgan's argument that interpreting the restitution statute to allow courts no discretion over the amount owed to L&I for CVCA benefits implicates the separation of powers doctrine. Morgan argues that requiring a court to "rubber-stamp" any request by L&I would give L&I unchecked power over a defendant's sentence and that the authority to amend a court's restitution order lies with the court, not an administrative agency. However, L&I is not exercising any

---

[9] Wash. Sup. Ct. oral arg., *Morgan*, *supra*, at 27 min., 57 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-2024091109/.

21

judicial sentencing power in carrying out its role under the CVCA and the restitution statute. The statute itself prescribes the relationship between L&I and the sentencing court, consistent with the legislature's power to set criminal punishment in a way that limits judicial sentencing discretion.

Restitution orders are entirely derived from statute. *Davison*, 116 Wn.2d at 919. The CVCA, chapter 7.68 RCW, provides the framework to determine the amount of benefits a victim is entitled to, and the restitution statute, RCW 9.94A.753, mandates that a court order restitution in that amount. Incorporating the CVCA into the restitution statute to prescribe how restitution should be imposed and calculated is well within the legislature's authority. *See In re Pers. Restraint of Forcha-Williams*, 200 Wn.2d 581, 591-92, 520 P.3d 939 (2022) ("[S]etting and altering criminal penalties is the sole prerogative of the legislature, and the judicial branch may intervene only when the legislature's chosen punishment violates the Eighth Amendment to the United States Constitution or article I, section 14 of the Washington Constitution."); *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937) ("Fixing of penalties or punishments for criminal offenses is a legislative function."). The legislature's decision to require courts to order restitution reflecting CVCA benefits reflects a policy choice that the legislature is entitled to make.

Finally, Morgan argues that if we find the restitution statute ambiguous, we should apply the rule of lenity generally applicable to criminal sentences. There is

no need to reach this argument because the statute is not ambiguous. RCW 9.94A.753(7), read in context with subsection (3)(b) and the CVCA, plainly requires courts to impose restitution in the amount requested by L&I for allowable CVCA program benefits caused by the defendant's criminal acts. Because the statutory scheme is clear and falls within the legislature's authority to shape criminal punishments, Morgan's arguments based on the rule of lenity and constitutional avoidance are unavailing.

CONCLUSION

RCW 9.94A.753(7) requires a sentencing court to order restitution in the amount of CVCA benefits paid by L&I to a qualifying victim, and the court lacks discretion to modify this amount based on individual circumstances of the defendant. We affirm the Court of Appeals and uphold Morgan's restitution order.

Stephens, C.J.

WE CONCUR:

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

González, J.    RESULT ONLY

Whitener, J.

Gordon McCloud, J.

No. 102643-9

KNODELL, J.[*] (concurring)—I write separately on an issue that is not addressed in the majority opinion, but one that I cannot ignore. I believe Montreal Morgan was improperly ordered to pay restitution in this case because the victim's medical and funeral expenses were not incurred as a result of the crime of conviction, which was conspiracy to commit murder. I further believe this case illustrates a larger problem in our legal system: unbridled prosecutorial discretion. However, because these issues were not preserved below, this court cannot address them in this case. Therefore, I concur in the result.

Morgan seems to have pleaded guilty to a crime he did not commit. When prosecutors initially filed charges in this case, they charged Morgan with felony murder. The State then dropped the charge down to conspiracy to commit murder. My review of the record in this case convinces me that Morgan committed the crime with which he was originally charged, felony murder. He seems to have helped his codefendants plan and

---

[*]Judge John Knodell is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

attempt to rob a home. During the course of that attempt, one of Morgan's codefendants caused the death of an occupant of the home. But Morgan does not seem to have committed the crime to which he pleaded guilty, conspiracy to commit murder. One conspires to commit a crime by agreeing with one or more persons to engage in or cause that crime. RCW 9A.28.040(1). Morgan made no such agreement to kill another person.

Because Morgan pleaded guilty only to conspiracy to commit murder, restitution was improper. "[R]estitution must be based on a causal relationship between the offense charged and proved and the victim's losses." *State v. Johnson*, 69 Wn. App. 189, 191, 847 P.2d 960 (1993). "Restitution may not be based on acts connected with the crime charged when those acts are not part of the charge." *State v. Tindal*, 50 Wn. App. 401, 403, 748 P.2d 695 (1988). Here, Morgan pleaded guilty only to *conspiracy* to commit murder, which is an inchoate, uncompleted crime. *See State v. Williams*, 131 Wn. App. 488, 497, 128 P.3d 98 (2006). He did not admit that either he or an accomplice caused death or injury when he pleaded guilty to conspiracy. While restitution would have been proper if Morgan was convicted of felony murder, it was not proper for his conspiracy conviction. The State should not have requested this restitution, and defendant's counsel should have objected to the State's request. For that matter, the sentencing judge should have known the requested restitution was improper. But because Morgan failed to raise an objection at sentencing, this issue is not preserved for appeal. If our adversarial system of justice had worked properly, this would not have been the outcome.

2

I take this opportunity to speak to another issue that this case raises, the unfettered discretion afforded the State when making charging decisions. I believe the State may have strategically overcharged Morgan to induce him to plead guilty to a crime he did not commit. Although Morgan's conduct supported a wide range of possible charges, the State chose to charge Morgan with felony murder, which has a high standard sentencing range. RCW 9.94A.510, .517. Morgan likely agreed to plead guilty to conspiracy to commit murder, a crime unsupported by probable cause, to avoid that high sentence.

The strategic overcharging of criminal defendants to induce a plea deal runs contrary to the Sentencing Reform Act of 1981's (SRA) directive to charge offenses that adequately describe the nature of defendants' conduct and to not overcharge. The SRA delegates responsibility to the State to ensure a defendant is sentenced appropriately. *State v. Lewis*, 115 Wn.2d 294, 306, 797 P.2d 1141 (1990). The SRA directs prosecutors to charge those crimes that adequately describe the nature and seriousness of a defendant's criminal conduct. RCW 9.94A.411(2)(a). The legislature further intended that a person's punishment be commensurate with the punishment imposed on others committing similar offenses. RCW 9.94A.010(3). To avoid the possibility that prosecutorial discretion could frustrate the SRA's purpose of uniform punishment, the legislature enacted charging and plea standards to guide prosecutors when exercising their discretion. RCW 9.94A.411. The statute specifically directs prosecutors not to

overcharge to obtain a plea.  RCW 9.94A.411(2)(a).  The State here seems not to have abided by these mandates.[1]

Judges have few tools to check a prosecutor's decision to overcharge and little discretion to consider a defendant's culpability in light of the circumstances of the crime. Morgan was raised in poverty and has experienced significant life challenges, including significant childhood abuse and neglect, lead exposure, multiple head traumas, substance use problems, and a major mood disorder.  Clerk's Papers at 185.  Prior to the enactment of the SRA, the judge who sentenced Morgan would have taken the unique circumstances of both Morgan and his crime into account when imposing a sentence.  But because this case was resolved through a plea, the trial court was prevented from taking the degree of Morgan's moral culpability into account when he was sentenced.  Under the SRA, absent a plea for a mitigated sentence, a trial court must sentence within a narrow sentencing

---

[1] The charging decisions in this case are particularly suspect because Morgan was initially charged with felony murder.  A felony murder charge relieves the prosecution of the necessity of proving the mens rea of common law murder, the intent to cause another's death.  But eliminating the intent requirement runs contrary to basic principles of criminal law because intent reflects a criminal defendant's moral blameworthiness.  Scholars, courts, and advocates have criticized the felony murder doctrine as morally indefensible, constitutionally suspect, penologically unsound, and discriminatory.  Perry Morierarty, Kat Albrecht & Caitlin Glass, *Race, Racial Bias and Imputed Liability Murder*, 51 Fordham Urb. L.J. 675, 687 (2024).  Some studies conclude that prosecutors charge felony murder disproportionately as a tool against defendants of color like Morgan, who is Black.  *See* NAZGOL GHANDOOSH, EMMA STAMMEN & CONNIE BUDACI, SENT'G PROJECT, FELONY MURDER: AN ON-RAMP FOR EXTREME SENTENCING 6 (2022) (detailing deeply concerning racial disparities in prosecutors' use of discretion when deciding which homicides to prosecute as felony murder and how many people to charge as codefendants), https://www.sentencingproject.org/app/uploads/2024/05/Felony-Murder-An-On-Ramp-for-Extreme-Sentencing.pdf [https://perma.cc/4BT6-4M7K].

range established by a defendant's criminal history and the seriousness the legislature assigns to the crime for which the defendant is being sentenced.

On the record before the court, Morgan had many reasons to argue that another crime, one with a shorter sentencing range, adequately described his criminal conduct. There is no indication the State considered whether the circumstances of Morgan's upbringing reduced his moral culpability, as a judge would have done prior to the SRA's enactment. But just as Morgan did not question whether the court had authority to assess medical and funeral expenses as restitution against him, he did not challenge the propriety of either of the State's charging decisions. Absent such a challenge, we cannot analyze whether the charges leveled against Morgan were disproportionate or if his race played a part in the prosecutor's charging decisions.

This case illustrates that courts do not adequately account for the danger that prosecutors will use their unbridled charging discretion to induce a plea that is made to avoid a lengthy sentence. Under current law, the only limit on a prosecutor's charging discretion is the court's inherent authority to dismiss unsubstantiated charges and the requirement that the prosecutor establish probable cause for the charged offense. *Lewis*, 115 Wn.2d at 306. Morgan's circumstances demonstrate that the *Lewis* court was wrong when it concluded the SRA's charging and plea standards adequately guard against prosecutorial overcharging. The courts should require prosecutors, at a minimum, to adopt clear standards by which defendants may challenge and courts may judge a

5

prosecutor's discretion. *See State ex rel. Schillberg v. Cascade Dist. Ct.*, 94 Wn.2d 772, 779, 621 P.2d 115 (1980).

This court disavows institutional bias and sometimes takes action when racial bias is evident. *See State v. Zamora*, 199 Wn.2d 698, 512 P.3d 512 (2022). However, the court seems unwilling to tackle one of the root causes of systemic bias: the lack of any judicial oversight when overzealous prosecutors seek convictions rather than justice. Until the court demonstrates a willingness to revisit *Lewis* and its progeny, the court is simply glossing over the fundamental problem—unfettered prosecutorial discretion in charging and plea negotiation. Laws and institutions, no matter how efficient and well-arranged, must be reformed or abolished if they are unjust. JOHN RAWLS, A THEORY OF JUSTICE 3 (rev. ed. 1999).

Although I have reservations regarding the outcome of this case, the issues I have discussed here were not preserved below. Therefore, I can only shrug, concur, and hope that in the future this court will revisit its conclusion in *Lewis* that the SRA's charging standards adequately protect defendants from overzealous prosecution.

_____
Knodell, J.P.T.